Alice F. THOMSON et al., Appellants-Condemnees,

v.

KANSAS CITY, Missouri, a Municipal Corporation, Respondent-Condemnor.

No. 50924.

Supreme Court of Missouri,

En Banc.

Nov. 9, 1964.

Rehearing Denied Dec. 14, 1964.

Herbert C. Hoffman, City Counselor, Ned B. Bahr, Asst. City Counselor, for respondent Kansas City.

Charles E. Thomson, Kansas City, for appellants Thomson.

HYDE, Judge.

This is a proceeding for condemnation of easements through appellants' land for construction and maintenance of sanitary sewer, in which a freeholders' jury authorized by Sec. 142 of the Kansas City Charter awarded no damages. The jury found "that the benefits equal or exceed the damages" for the sewer right-of-way easements across defendants' land. Judgment was entered in accordance with this verdict, which was affirmed by the Kansas City Court of Appeals, Thomson v. Kansas City, 379 S.W.2d 194. We transferred the case under the provisions of Sec. 10, Art. V, . Constitution, V.A.M.S.

The Court of Appeals stated the following material facts. "Appellants, Alice F., Bessie E., Renick A. and Tracy A. Thompson are the owners of an approximately 23 acre tract located near 35th and Eastern Avenue in Kansas City. Tracts No. 9 and 9A, as described in the City's petition, relate to this tract. No. 9 describes a line of approximately 430 lineal feet (total of two separate lines on each side of appellants' tract) along and upon the Thompson property and contains an area 5 feet in width on each side of this line for use as a sewer right of way. After construction of the sewer this strip 10 feet in width will be covered over and may be used by the landowner, but the City retains an easement thereon. Tract 9A describes an additional strip 10 feet wide—5 feet on each side of Tract 9. The 9A easement is temporary and would terminate upon completion of the sewer construction—a period estimated to be not less than 6 nor more than 12 months. The plans provided for construction of only a sanitary sewer and not a combined sanitary and storm sewer. * * * Mr. William E. Thompson was the only witness who testified for the condemnees. He said this 23 acre tract was purchased by his father in 1927 for a price of $500 per acre; that the family for many years had been 'operating quarries and crushing stone'; that before buying this tract extensive exploration had been done on it and valuable limestone deposits known as Bethany Falls and Winterset ledges had been discovered underground. He stated that the area was wooded and the West 180 feet was zoned for heavy industry. This tract has not, during the 37 years since its purchase in 1927 by

the Thompsons, been used for anything. Mr. Thompson said a demand was developing for these rock products and he expressed the opinion the 23 acres were worth between $9,000 and $12,000 per acre for such use which in his opinion was the highest and best use. To recover these rock deposits economically requires the use of high explosives and heavy blasting. In Mr. Thompson's opinion such blasting would probably damage the sewer and therefore the tract was severely damaged insofar as economic recovery of the rock deposits was concerned." Reference to other facts will be made in connection with our rulings.

The condemnation proceedings were under Art. VI of the Charter of Kansas City, Secs. 149, 151 and 152 thereof, providing the procedure as follows:

"Sec. 149. *Rules for fixing compensation.* The jury of freeholders shall ascertain the just compensation to be paid, as follows: * * * Second. For each piece of private property taken, when the public use thereof may be such that the city need only have such possession and control as shall not wholly exclude the beneficial use thereof by the owner or owners, the actual damage from the public use specified in the ordinance.

"Sec. 151. *Jury to assess benefits.* If the land to be purchased, taken or damaged as aforesaid, is to be paid for by the assessment of benefits upon real estate, whether the land acquired is to be condemned or purchased, the jury of freeholders, to pay compensation for the land purchased, taken or damaged, shall determine the amount of benefit to the city at large, inclusive of any benefit to the property of the city, and shall determine the value of the benefit of the proposed improvement to each and every lot, piece and parcel of private real property, exclusive of the buildings and improvements thereon, within the benefit district, if any benefits is found to accrue thereto. In case the total of such benefits, including the benefits assessed to the city at large, equals or exceeds the compensation ascer-

tained to be paid for the property purchased, taken or damaged, then said jury shall assess against the city the amount of benefits to the city as aforesaid and shall assess the balance of the cost of such improvement against the several lots and parcels of private and real property found benefited, each lot or parcel of ground to be assessed with an amount bearing the same ratio to such balance as the benefit to each lot or parcel bears to the whole benefit to all the private real property assessed.

"Sec. 152. *Verdict.* The jury of freeholders shall then render a verdict in said cause, which shall show:

"First: A correct description of each piece or parcel of private property taken, if any, and the value thereof, and of each piece of property damaged, and the amount of damages thereto, for which compensation is to be paid, as ascertained by the jury as above provided. In case the property to be taken or damaged is to be paid for out of the city's general fund or from the proceeds from a sale of bonds, or out of other funds of the city, and not by the assessment of benefits against real estate, no further finding of the jury shall be necessary.

"Second. If the property purchased, taken or damaged is to be paid by the assessment of benefits upon real estate, such verdict shall also show, for the payment of compensation for the property purchased, taken or damaged, the amount, if any, assessed against the city, and the amount assessed as benefits against each piece and parcel of private property with the benefit district found to be benefited. Such verdict, when confirmed as hereinafter provided, shall stand as a judgment against the city for the amount so assessed against the city."

The verdict of the freeholders' jury in this case as to appellants' land was: "We the jury find that the benefits equal or exceed the damages as to Tract 9 and 9A and award no dollars—$0.00." The verdict was the same as to each tract taken from eight other landowners in the sewer

districts involved. Apparently from the exhibits filed, the City obtained easement conveyances from some landowners who were not involved thereafter in the condemnation proceeding. We agree with the rulings of the Court of Appeals that appellants' first two points, which are obviously correct statements of law, have no real bearing on the decision of this case, namely (1) "Private property cannot be taken nor damages for public use without just compensation"; and (2) "Only special benefits, as distinguished from general benefits, may be set-off against damages for property taken by condemnation."

As did the Court of Appeals, we next consider appellants' fourth point in which they complain that the procedure set out in the Charter was not followed because the jury did not ascertain and state the damages to their land (and the land of others) and did not show the amount assessed as benefits against each parcel of private property in the benefit district. See In re Main Street (Kansas City v. Armour), Mo.Sup., 198 S.W. 821, and City of Kansas City v. Baird, 98 Mo. 215, 11 S.W. 243, 11 S.W. 562, considering substantially the same procedure required by previous charters. It clearly does appear from the court's instructions and the verdict in this case that the charter procedure was not followed. Instead the procedure followed was like that in state highway condemnation cases, where all damages are paid by the state instead of by special benefit assessments against landowners in a special benefit district. However, appellants did not allege error in this respect in its motion for new trial. It stated therein in several different ways the failure to allow them damages but did not mention failure to assess benefits on the lands in the district nor the failure to separately assess benefits and damages. Morever it made no specific objections to any instruction, as required by Rule 79.03, V.A.M.R. to preserve error for review. Furthermore, appellants offered an instruction, given by the court, which required the same procedure of deducting special benefits from appellants' damages as that given at the request of the City.

The pertinent part of Instruction No. 1, given by the court at the request of the City, was:

"If you find and believe from the evidence that the special and peculiar benefits, if any, to any of the tracts described in evidence equal or exceed the damages to said tract or tracts, if any, from the proposed improvement, then you shall not report an allowance for damages to such tract or tracts.

"In the event you determine the damages exceed the special and peculiar benefits to the property of the condemnees, it will then be your province to determine by the assessment of benefits to the City at large, if any, and to the property within the benefit district referred to in evidence in this case, *exclusive of condemnees' property*, such amount as shall be necessary to pay such damages.

"You are further instructed that said ordinance (Committee Substitute) declares that certain private property is deemed benefited by the proposed improvement and may be assessed and charged to pay compensation therefor in accordance with applicable charter provisions, and you may take this into account when you make your deliberation on your verdict.

"To pay the compensation for the easements taken, as described in evidence, and for any damages to the lands affected, if any, the jury shall first determine the amount of benefits to the City at large, if any, inclusive of any benefit to the property of the City, if any, within the benefit district, as fixed in said ordinance, and assess the same against the City; next, the jury shall determine the value of the benefit of the proposed improvement, *exclusive of condemnees' property*, to each and every lot, piece and parcel of private real property, exclusive of the buildings and improvements thereon, within the benefit district, if you find any benefits accrue thereto. In

case the total of such benefits, including the benefits, if any, assessed to the City at large, equals or exceeds the compensation ascertained to be paid for the property taken or damaged, then you shall first assess against the City the amount of benefits, if any, to the City, as aforesaid; and, second, you shall assess the balance of the cost of such improvement against the several lots and parcels of private real property found benefited, if you so find; each lot or parcel of ground to be assessed with an amount bearing the same ratio to such balance as the benefit to each lot or parcel bears to the whole benefit of all the private real property assessed."

Instruction No. 2 given at the request of appellants contained the following directions:

"[I]f the jury find from the evidence that the property of the defendants and condemnees Thomson mentioned in evience is damaged, then the jury should allow the said defendants and condemnees:

"First, the fair reasonable market value of Tract No. 9 which is the property actually taken by the condemnor from the condemnees Thomsons' land, as shown by the evidence.

"And second, for such damages, if any, to the remainder of the condemnees Thomsons' said land caused by the establishment, construction and maintenance of the sewer in question, over said Tract No. 9 on said condemnees' land, which you may find from the evidence, condemnees aforesaid have sustained thereby; and the total amount found on account of these two items, *less any special benefits*, the amount of which has been proved, if any, as defined in other instructions herein, as will accrue to said condemnees' remaining property, will be *your verdict for the condemnees Thomson* in this case, if your verdict in this case is for the condemnees Thomson." (All emphasis in instructions ours.)

■ Appellants by requesting this instruction agreed to and joined in the method of determining their benefits and damages submitted by the City. Therefore, they are in no position to complain of the failure of the court to require the jury to separately assess benefits and damages, particularly since the instruction given at the City's request excluded assessment of benefits against appellants' land in any amount greater than the damages found. See City of Jefferson v. Wells, 263 Mo. 231, 172 S.W. 329.

Appellants remaining contention (third point in their briefs) is that their damages greatly exceed any special benefits assessable against their property. Appellants challenge the following statement of the Court of Appeals: "If it be held that a new highway presumptively confers a 'special benefit' upon the adjoining land, we think it follows that a sewer confers such a special benefit upon the adjoining land in a large city or in a residential or industrial area. However, in each case whether it actually does confer such a benefit is for the jury." If that were not true, there would be no basis for establishing a special benefit district and requiring the landowners to pay for it. Nevertheless that principle as applied in state highway condemnation cases, where the landowners pay no part of the cost, does not provide the whole answer in cases like this one where a special benefit district is established for the purpose of requiring the landowners to pay for the cost of the sewer. That is the real reason for procedure requiring damages and benefits to be separately determined and stated where landowners pay for improvement costs. See procedure provided for drainage districts, Secs. 242.260, 243.080; and levee districts, Sec. 245.120; see also 17A Am.Jur. 486, Drains and Sewers, Sec. 64; 28 C.J.S. Drains §§ 50 and 59, pp. 387, 409; 3 Nichols on Eminent Domain 70, Sec. 8.6209; 18 Am.Jur. 948, Eminent Domain, Sec. 303, Annotation 145 A.L.R. 133–155. As stated in this annotation (p. 135) the one safe standard is: "[B]enefits cannot be deducted if, in a particular situation, to allow such deduction would in effect

compel the condemnee to pay twice for the same benefit." See Carroll v. City of Marshall, 99 Mo.App. 464, 73 S.W. 1102; see also Widman Investment Co. v. City of St. Joseph, 191 Mo. 459, 90 S.W. 763. However, as we have noted, in this case appellants' requested instruction given by the court authorized the procedure of deducting special benefits from damages so that the parties hereto were in agreement on that procedure for this case.

■ It is true, according to appellants' evidence, that their damages would be large and no doubt would exceed any reasonable special benefits from the construction of the sewer. However, the freeholders' jury was not bound by or required to accept appellants' evidence and also were authorized to make findings from their own inspection of the premises. Kansas City v. Jones Store Co., 325 Mo. 226, 28 S.W.2d 1008, 1016. Appellants had testimony to the effect that construction of the sewer would prevent the most economical type of blasting on at least the south half of their land, make it too expensive to get out the rock and therefore lessen the value of their land. Appellants also had testimony that, while the west part of their land was zoned for heavy industry, quarrying and a rock crushing plant there was authorized. However, it did appear that the City had restrictions with respect to blasting within its limits although these requirements were not detailed in evidence. Another important consideration for the jury is that the sewer right of way only ran 80 feet across the southwest corner of appellants' land and 350 feet across their southeast corner but between these two points for more than 1000 feet it was on other land south of appellants' land. We therefore accept the conclusions of the Court of Appeals as follows: "Other buildings and construction are nearby, the presence of which must be considered before heavy blasting is done. Besides, the Thomsons have owned this property for 37 years. It remains now as it was when purchased—a wooded area. The jury might reasonably conclude that

a rock quarry was not the only highest and best use to which the tract could be put; that blasting operations would not endanger the underground sewer any more than it would the above ground construction nearby, and that the value of the tract was not materially—but only nominally—damaged by the sewer."

The judgment is affirmed.

All concur.