CITY OF JACKSON, a Municipal Corporation of the Fourth Class, Plaintiff-Appellant,

v.

Wendell L. BARKS and Verna Barks, his wife, Defendants-Respondents.

No. 34019.

Missouri Court of Appeals, St. Louis District.

Jan. 25, 1972.

Buerkle & Lowes, Kenneth L. Waldron, Jackson, Mo., for plaintiff-appellant.

Kenneth W. Shrum, Marble Hill, Mo., for defendants-respondents.

CLEMENS, Commissioner.

In this condemnation case the jury gave the defendant landowners at $1,500 verdict and the City of Jackson appeals from the judgment. A condensed factual statement will suffice.

Defendants owned a 7.72-acre tract in Jackson on which they had three houses and a trailer court. Sewage disposal was by septic tanks. The City planned to extend its sanitary sewage facilities and for this purpose condemned a 15 foot by 795 foot strip along the south side of defendants' land and running north in the rear of the three houses. The condemned land included spaces for two or three more trailer sites which defendants could have rented for $20 a month each. Both parties excepted to the condemnation commissioners' award. By trial time the sewer line had been laid and defendants had paid $7,606 on a special sewer tax bill.

Defendants' witnesses gave value estimates before and after the taking. Their estimates of reduced value ranged from $2,000 to $3,500. The City's value witness estimated the property had appreciated $22,000 in value by virtue of special benefits bestowed by gaining access to the City's sewer system.

The threshold issue concerns substantial omissions from MAI 2.01, the overall cautionary instruction. We determine the issue according to Civil Rule 70.01(c), V.A. M.R.: "The giving of an instruction in violation of the provisions of this rule shall constitute error, its prejudicial effect to be judicially determined."

■ Among other omissions and deviations—which standing alone might be harmless—there were two notable omissions in the MAI 2.01 given. We quote from two paragraphs, with the omissions bracketed:

"4. It is your duty to determine the facts, and to determine them from the evidence [and the reasonable inferences

arising from such evidence], and in so doing you must not indulge in guesswork or speculation."

"8. In considering the weight and value of the testimony of any witness you may take into consideration the appearance, attitude and behavior of the witness, the interest of the witness in the outcome of the suit [the relation of the witness to any parties to the suit], the inclination of the witness to speak truthfully or untruthfully, the probability or improbability of the witness' statements, and all other facts and circumstances in evidence. . . ."

The Supreme Court's Notes on Use for MAI 2.01 declare: "This instruction shall be read by the trial judge immediately after the jury is sworn and before the opening statement of counsel." This is a specific, direct order that MAI 2.01 must be given. As given, the instruction failed to tell the jury two important elements of their decisional process: they may draw reasonable inferences from the evidence and they may consider the relationship between each witness and the parties litigant.

Such omissions are error and presumptively prejudicial unless it is made perfectly clear to us that no prejudice could have resulted. Brown v. St. Louis Public Service Co., Mo., 421 S.W.2d 255[1–3]; Murphy v. Land, Mo., 420 S.W.2d 505[3–7]; Brannaker v. Transamerican Freight Lines, Inc., Mo., 428 S.W.2d 524[19, 20]. Two examples show the contrary.

■ On the City's cross examination of defendants' five value witnesses each was shown to have limited experience in appraising real estate. The jurors were entitled to draw inferences from this evidence, but MAI 2.01 was given failed to tell them so. Again, defendants' value witness Crites was shown to be hostile to the plaintiff City. The jurors were entitled to consider this relationship in weighing Crites' testimony, but MAI 2.01 as given failed to tell them so. Since we are not persuaded

that no prejudice could have resulted from the two omissions we hold that giving the garbled version of MAI 2.01 was reversible error.

We will discuss two other points raised by the City since each may recur on retrial.

■ ■ The City contends the trial court erred in admitting defendants' evidence that they paid a $7,606 special tax bill levied upon their land for their share of the sewer construction expense. Throughout the trial the City contended in argument and by evidence that this was a "no damage case"; that is, the sewer easement conferred a special benefit upon defendants' property in excess of the defendants' damage from the taking. The City in effect argues that since the tax was not levied until after the land was condemned the amount of this tax was irrelevant to the value of defendants' land at the moment of taking. That may have been so if the City had not injected the special benefits issue. If the value of defendants' land was increased by the sewer line the gross amount of that benefit was offset by the defendants' share of the cost of construction. In other words, the City was entitled to claim the net benefit to defendants' land, not the gross benefit; to hold otherwise would compel defendants to pay twice for the sewer line, and thereby take their property without just compensation.

The City cites this court's opinion in State ex rel. State Highway Commission v. Vesper, Mo.App., 419 S.W.2d 469, for its contention that the cost of installing a sewer line is inadmissible in determining the amount of special benefits. This overlooks two vital distinctions. In *Vesper* the condemnor, not the landowners, sought to show the cost of installing the sewer, and more significantly, in *Vesper* the condemnor, not the landowners, paid for installing the sewer. This latter distinction—payment for the improvement by the landowners—changed the measure of special bene-

fits. See Thomson v. Kansas City, Mo. En Banc, 384 S.W.2d 518[1].

As said, the City contended the amount of the sewer tax was irrelevant since the tax did not exist at the moment of taking. But for that matter, neither did the sewer line. Future use, however, may be a factor in determining value. As we ruled in *Vesper*: "The underlying principle is that the amount of a condemnee's compensation is determined as of the time of appropriation, not as of the time of construction or the time of trial. It is proper, of course, to consider the depreciation in value that will result from the proper prospective use of the condemned property. For this reason evidence is admissible to show the prospective use factors that were reasonably apparent at the time of appropriation and which a purchaser would normally consider in determining the value of the remaining property." The corollary to this is that to be allowed credit for special benefits the condemnor may show the *appreciation* in value from the prospective use of the condemned property. But, as said, that amount is the net appreciation rather than the gross appreciation. Since the City sought to show the amount of gross appreciation bestowed by the prospective sewer line the trial court properly allowed the defendants to show what they were required to pay to acquire that benefit.

 Still another point may arise on retrial. The City contends that in closing argument defendants' counsel argued in effect that this was a "forceful taking" of defendants' property by the City. Such an argument is prejudicial since it tends "to inflame the minds of the jurors, to arouse their sympathy for the defendants and prejudice against the plaintiff, and for a verdict in a larger amount than warranted by an impartial consideration of the evidence." State ex rel. State Highway Commission v. Goodson, Mo., 365 Mo. 260, 281 S.W.2d 858[2, 3]. Upon retrial defendants' counsel should consider this limitation on the range of closing argument.

For error in giving the improperly modified MAI 2.01 the cause is reversed and remanded for new trial.

PER CURIAM:

The foregoing opinion of .CLEMENS, C., is adopted as the opinion of this court. Accordingly, the cause is reversed and remanded for new trial.

BRADY, P. J., DOWD, J., and VERNON W. MEYER, Special Judge, concurs.