**Leola Mae McCORY, Plaintiff-Respondent,**

v.

**Harry Wilson KNOWLES, Defendant-Appellant.**

**No. 34167.**

Missouri Court of Appeals,
St. Louis District.

Feb. 22, 1972.

Motion for Rehearing or to Transfer
to Supreme Court Denied
March 23, 1972.

Application to Transfer Denied
May 8, 1972.

Buerkle, Buerkle & Lowes, Albert C. Lowes, Jackson, for defendant-appellant.

Schnapp, Graham & Reid, Maurice B. Graham, Fredericktown, for plaintiff-respondent.

WEIER, Judge.

From a judgment for plaintiff awarding her $9,100.00 for personal injuries arising out of an automobile collision, defendant appeals. Defendant first contends that plaintiff is foreclosed from any recovery because she was guilty of contributory negligence as a matter of law, and secondly, if the first contention is ruled against de-

fendant, he is entitled to a reversal and a new trial because of prejudicial error committed by the court below in the trial of the case. We overrule the first contention, but sustain the second as to the giving of an instruction, and reverse and remand.

■■■ As to contributory negligence, only the evidence with reasonable inferences therefrom most favorable to plaintiff may be considered. Contributory negligence is generally an issue to be decided by the jury. It is when the only reasonable conclusion to be drawn from that evidence establishes that plaintiff is negligent and that the negligence caused or contributed to cause his injury, that he may be held to be contributorily negligent as a matter of law. Reasonable minds may not differ as to his negligence, otherwise this question is for the jury. Ruediger v. American Bus Lines, Inc., Mo., 426 S.W.2d 4, 10 [6, 7]. We therefore recite those facts favoring plaintiff.

The place of collision was about five miles south of Farmington on Route 00, formerly U. S. Highway 67. The highway at this place runs north and south. The travelled portion is constructed of concrete twenty feet wide, with a shoulder on either side. There is a gradual curve which does not interfere with visibility. The road is nearly level, but, according to photographs, there is a slight dip where the defendant stopped his station wagon. The collision occurred in the early morning, while it was completely dark. No lights in adjacent areas illuminated the scene. There was no moonlight.

Mrs. McCory, on her way to work at Farmington, was travelling northwardly 55 to 60 miles per hour just before she collided with the left rear of defendant's parked station wagon. Plaintiff recalled that she had previously passed a southbound automobile. The passing car had its bright headlights on. She had flicked hers from dim to bright and then back to dim, several times, but the driver persisted in keeping his on bright. She passed this car "almost directly in front of the Hale house." The next thing she saw was a dark splotch on the highway, which turned out to be defendant's station wagon. She was only 55 to 60 feet away from the station wagon when she first saw it. As to the time interval between passing the southbound car and the time of impact, although her testimony is not clear, she indicated there was not time to turn the lights on her car back to bright. The station wagon had no lights on it. It was partially on the east shoulder, with 3 to 4 feet of its left rear projecting onto the highway in the northbound lane.

■■■ Defendant assumes the distance between the Hale house, identified by plaintiff as the landmark near which she had passed the oncoming car with bright lights, and the site of the collision to be 462 feet. This was the distance shown on a sketch introduced by defendant without objection. As to who drew the sketch, measured the highway, or wrote the distances thereon, the record is silent. At one point, at the request of defendant's counsel, it was agreed that both attorneys had gone out, made measurements and were present when the photographs of the scene were made and that "those numbers all match up with what has been marked Defendant's Exhibit A." There is no explanation, however, as to how the point of impact was fixed upon this sketch nor whether the numbers referred to in the agreement were the identifying numbers of the photographic exhibits introduced by plaintiff or were the distance measurements indicating where the photographs were taken. There was a considerable, although not measured, discrepancy between the point which plaintiff determined to be the location of the collision and the place where the highway patrolman found the debris. The patrolman placed the debris much nearer the Hale house than the mark made by Mrs. McCory on one of the exhibits. We cannot hold plaintiff's counsel to an admission as to distance upon an agreement on defendant's exhibit which

was so vague and the exhibit itself so inadequately identified or explained. It can just as easily be inferred from the evidence that Mrs. McCory passed the automobile with the bright lights, not in front, but "almost" in front of the Hale house. Thereafter, within a period of time which was not sufficient for her to turn up her lights, she saw a dark object. It was in a dip or low place in the highway. She estimated this object to be 55 feet away. Her estimate of her highest rate of speed was 60 miles per hour, or 88 feet per second. At a reaction time of three-fourths second she would have gone 66 feet before she could have responded to her sensual determination of danger and could have taken affirmative action to avoid collision. On such evidence we cannot convict her of contributory negligence.

We have been referred to many cases by counsel. Our review of those cited and those found in our own research to be near the facts of this case reveal that a motorist colliding with the rear of another vehicle on a dark highway is not necessarily guilty of contributory negligence as a matter of law, when there are other factors in addition to darkness. Such factors found in the instant case and the reported cases are: oncoming vehicles with bright lights, no tail lights on the stopped or slowly moving vehicle, no light in adjacent areas which might afford illumination, and a stopped or slowly moving vehicle on the travelled portion of the highway which an overtaking motorist could expect to be unobstructed. Illustrative cases are: Rooney v. Lloyd Metal Products Company, Mo., 458 S.W.2d 561; Haley v. Edwards, Mo., 276 S.W.2d 153; Walker v. Massey, Mo.App., 417 S. W.2d 14; Beaver v. Wilhelm, Mo.App., 321 S.W.2d 1. In Van Sickel v. F. M. Stamper Co., Mo.App., 198 S.W.2d 539, a case defendant considers nearest to the case at bar, the court considered facts which were dissimilar in several important respects. There, the undisputed evidence revealed that six or seven red lights were displayed on the rear of the stopped truck; and the highway and truck at the scene of the collision were illuminated by a nearby light some twenty-five to thirty feet from the truck.

In the case before us, considering the facts favorable to her, plaintiff's contributory negligence has not been established as a matter of law. She was not previously aware of the presence of defendant's station wagon, stopped in the dark, without tail lights and with its left rear projecting onto the northbound concrete lane of the highway 3 to 4 feet, at a place where she had a right to assume the way was clear and she could proceed with safety on her side of the pavement. The decision of the trial judge denying defendant's motion for directed verdict at the close of all the evidence and submitting the case to the jury was not error, but was justified by the evidence.

■ We turn now to contentions that the trial court committed prejudicial error in giving the jury certain instructions. The first instruction is identical to one on which this court has just written and wherein reversible error was determined to arise in its use. It is a version of MAI 2.01, the cautionary instruction required to be given by the court at the beginning of each jury civil trial after the jury is sworn. The particular version used in this case was identical to the one read to the jury in City of Jackson v. Barks, Mo.App., 476 S.W.2d 162, decided by this court January 25, 1972. The same omissions noted therein appear in the instruction before us. When the phrases "and the reasonable inferences arising from such evidence" in paragraph 4 and "the relation of the witness to any parties to the suit" in paragraph 8 of MAI 2.01 were omitted, the instruction failed to tell the jury that it might draw reasonable inferences from the evidence and consider relationships between witnesses and the parties to the lawsuit. At the same time, the remaining portions of the two paragraphs emphasized that the jury must determine the facts from the evidence but not indulge in guesswork or speculation, thereby setting a

stricter standard for their prime function of factual determination than the law requires. Again, by omitting the reference to relationship of witnesses to parties, the bearing which such relationship had on the truth or falseness, the probability or improbability of the testimony of such witnesses, was not called to the attention of the jury.

As was stated in City of Jackson v. Barks, supra, such omissions are error and presumptively prejudicial, unless it is made perfectly clear that no prejudice could have resulted. Brown v. St. Louis Public Service Co., Mo., 421 S.W.2d 255 [1–3]; Murphy v. Land, Mo., 420 S.W.2d 505 [3–7]; Brannaker v. Transamerican Freight Lines, Inc., Mo., 428 S.W.2d 524 [19, 20]. We need not cite numerous specific examples where reasonable inferences could be drawn from plaintiff's account of the facts leading up to the collision and which could have benefitted the defendant's case. We mention only one. Plaintiff's references to the location where she passed the car with bright lights, although not absolutely definite, could give rise to an inference she had enough time for her eyes to readjust and see defendant's vehicle in time to take affirmative action. Further, one of the nearest of relatives, plaintiff's husband, was her witness on the location of debris on the highway, her activities and physical impairment after the collision—all facts controverted by defendant. Certainly, the relationship of this witness would have a bearing on his credibility. For the giving of the apocryphal version of MAI No. 2.01, we must reverse and remand.

■■■ Next, defendant contends there was prejudicial error in the giving of plaintiff's verdict-directing instruction, Instruction No. 2, which submitted the specific negligence of defendant stopping his vehicle in a lane reserved for moving traffic. Specified error was in substituting the words "station wagon" for "automobile", the latter being used in MAI No. 17.20. We cannot believe that MAI is so sacrosanct that a word more descriptive of a vehicle in the same class may not be sustituted for another term which has been used in MAI in the hypothesis of a negligent act. We note that in MAI Chapter 17 on Motor Vehicles, the word "car" is used in at least three negligence submissions instead of the word "automobile". (MAI 17.07, 17.09 and 17.10.) It is also of interest to note that the word "vehicle" used in "Rules of the Road", Sections 304.014 to 304.026, RSMo 1969, V.A.M.S., is defined as "any device operated on highways, except those used exclusively on rails or tracks." Section 304.025, RSMo 1969, V.A.M.S. Obviously, a motorcycle would be subject to the same mandates of the law in its operation on a highway and yet one would not refer to it in MAI 17.20 as an "automobile." The same principle would no doubt be true in a case involving a bus or truck. Trivial imperfection and slight deviation are not enough to create prejudicial error in MAI instructions. The test is not absolute perfection in form. Rather, it is whether the instruction is substantially correct. Johnson v. West, Mo., 416 S.W.2d 162, 164 [1, 2]. Here, the use of the word "station wagon" was more descriptive of defendant's vehicle than the word "automobile." We find no error in its substitution and use in the instruction.

The remainder of the errors contended by defendant to be prejudicial to his case were rulings by the trial court on matters that arose during the trial, together with alleged gross excessiveness of the verdict, asserted to be the result of bias and prejudice on the part of the jury. It is not essential that we discuss or determine these since the judgment must be reversed and the case remanded. On retrial it is obvious that the same problems will probably not again arise.

PER CURIAM:

The foregoing opinion by WEIER, J., a commissioner when the case was submitted to the Court, is adopted as the opinion of.

the Court. Accordingly, the judgment is reversed and the case remanded.

BRADY, C. J., and DOWD, J., and VERNON W. MEYER, Special Judge, concur.