**William L. WASHINGTON, Appellant,**

v.

**SEARS, ROEBUCK & CO., Respondent.**

**No. 40617.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 26, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 13, 1979.

Application to Transfer Denied Sept. 11, 1979.

Shifrin, Treiman, Dempsey & Ulrich, Richard R. Vouga, St. Louis, for appellant.

Joel D. Monson, Stuart M. Haw, Jr., St. Louis, for respondent.

CRIST, Judge.

Civil suit seeking damages for malicious prosecution (Count I) and negligent maintenance of business property (Count II). The trial court directed a verdict for defendant on Count II at the close of all the evidence. The jury returned a verdict for plaintiff on

Count I in the amount of $1,500. Plaintiff appeals. We reverse as to Count I and affirm as to Count II.

■ Plaintiff first complains the trial court erred by embellishing pattern instruction MAI 2.01. The cautionary instruction, as embellished, is set out in full in an appendix to this opinion.

Most of the comments of the experienced trial judge were not prejudicial to either party. Indeed, most of his comments were good and probably helpful to the understanding of the jury. The Missouri ·Supreme Court Committee on Civil Jury Instructions would do well to consider some of his comments.

The Supreme Court·of Missouri has given "a specific, direct order that MAI 2.01 must be given." *City of Jackson v. Barks*, 476 S.W.2d 162, 164 (Mo.App.1972); Rule 70.-02(a); MAI 2.01—Notes on Use (1978). It should be given to the exclusion of any other instruction on the same subject. Rule 70.02(b). A trial judge should not interrupt his reading of MAI 2.01 for additional comments or interpretation; its provisions are clear and they adequately caution the jury. MAI 2.01 should be given as written. *Cf.*: *Chapman v. Bradley*, 478 S.W.2d 873 (Mo.App.1972); *McCory v. Knowles*, 478 S.W.2d 682, 685–86 (Mo.App.1972); *City of Jackson v. Barks, supra* ; (cases in which minute deviations from MAI 2.01 required a new trial).

Continued excursions from MAI 2.01 must end. If the deviations were permitted in this case, the appellate courts would be deluged by appeals pertaining to the meaning of MAI 2.01 as interpreted by the various trial courts. The judgment as to Count I is reversed and remanded for a new trial.

■ Plaintiff also complains that the trial court erred in directing a verdict for defendant on plaintiff's Count II at the close of all the evidence. This count sought recovery for damages to plaintiff's car when it slid into a pillar located on defendant's premises. Plaintiff asserts negligence on the theory that defendant is liable for having failed to remedy icy conditions on its parking lot. We find no error.

Defendant failed to make a submissible case by his own uncontroverted testimony: When he got through work at about 5:30 p. m. it was freezing outside and raining. Because of the bad weather, he went to Northwest Plaza Sears to get a battery. He had been having battery trouble. He was aware that it had recently started sleeting and continued to sleet as he arrived at the Sears service center. While he was driving on the parking lot outside the service center, his car slid on some ice and hit a concrete pillar, causing damage to his car. At the moment the car struck the pillar it was sleeting and getting worse.

We do not hold *per se* that no distinction exists between the "slip and fall" cases cited by both parties and cases, such as the present one, involving automobile collisions on icy parking lots. But on the particular facts here present, we find those cases persuasive. Plaintiff knew of the condition, dangerous or not, as much as did the defendant. A warning would have told plaintiff nothing more than he already knew. There was a general condition of freezing rain or sleet at the time of the accident. The plaintiff did not make a submissible case. *Johnson v. Murphy*, 417 S.W.2d 527, 529 (Mo.App.1967).

The judgment of the trial court in directing a verdict for defendant on Count II of plaintiff's petition is affirmed.

REINHARD, P. J., and GUNN, J., concur.

## APPENDIX

Portions underlined are taken from MAI 2.01. All other comments were inspired by the trial court and made *ex gratia.*

## "INSTRUCTION NO. 1

This case will proceed in the following order:

First the parties may each make an opening statement outlining the case. Second, the Plaintiff will first introduce evidence. At the conclusion of all of the Plaintiff's

evidence the Defendant has a right to introduce evidence. Rebuttal evidence may be introduced. Third, at the conclusion of all the evidence further instructions will be given after which the attorneys may make their closing arguments and then you will select a foreman or forelady or foreperson, whatever way you want to describe it, it doesn't mean that you have to be a man to be the foreman of the jury, deliberate and arrive at your verdict.

2. Faithful performance by you of your duties is vital to the administration of justice. Now listen carefully to number three and number four because they explain your role and mine, what I referred to earlier.

The law applicable in this suit is given you in these instructions and in other instructions that you will receive at the close of all the evidence in this case and it is your duty to follow all such instructions. Now as I told you earlier someone has to interpret what the rules are and the duty of interpreting what the rules are is given to the trial Judge. When I make an interpretation as to what the law is that binds all parties to the case. It binds the Plaintiff, the Defendant, and the jury. All must then accept my interpretation of what the rules are as being the law and whether they agree with it or not, that's the rules we must play by once the trial Judge makes that determination so all of you have taken an oath to follow the instructions and you must do that. Now you may say, 'What if the trial Judge is wrong?' Well, you see this young lady writing on her stenotype machine? That's the reason why she's taking down every word what is said because if I make a mistake as to the law either of the parties to the lawsuit or both of them may ask my bosses at the Appellate Court to review what I have done and if they decide that I—that I decided wrongly and made a wrong interpretation of the law then they tell me so and they tell me what they want me to do. They say try it again, set it aside, do this, whatever has to be done they direct me to do it and I must take their rulings. That way you see we have standardization across the State of Missouri because every trial Judge is required to know the law and if he doesn't know it and the Appellate Court says that he's wrong in making an interpretation they correct him and that way the same law will be applied in Cape Girardeau, Kansas City, St. Louis County, in the City of St. Louis, all the Judges interpret the law the same way and the Appellate Court makes the decisions, and that's why she is there writing these words down.

Now, I might mention two things that come from that that sometimes give jurors trouble. Although our court reporter is making a record for the Appellate Court jurors are not allowed and I am not allowed to send to you a copy of the transcript that she makes so if you listen to a witness and then when you begin your deliberations you say, 'I'd like to find out what witness X says, I'll send to the Judge a request, send up the testimony of the transcript of witness X.' If you do that I will have to tell you that I cannot follow that request, I cannot accede to that request. Jurors in the State of Missouri are not allowed to receive the transcript of the trial. It is for the Appellate Court. Now, you might say and we have had one or two other jurors say, 'Well, I'll make my own notes,' and whip out a little pad and starting writing down during the trial what is said. That isn't allowed either. By Missouri law, no juror is allowed to make statements—to make a record. The reason for that is that this lady here writing down what she says is the testimony and you go up to your jury room and there you dispute about it the tendency would be to accept whatever she wrote down and since she's not an official court reporter and may have gotten it wrong, it wouldn't be fair so no one is allowed to make notes nor can I supply the notes to you. That's why there's twelve of you on a jury, that's the reason why there's twelve instead of two or three so that all twelve can listen and all twelve will most likely come to an accurate recollection of what was actually said.

Now this instruction also refers to other instructions that you will receive at the close of all of the evidence in the case.

When the case is concluded the Court will then give you tailored instructions for this particular case. These instructions will be geared for this case and this case only and they're done frankly first of all from my talking to the counsel here who give me their recommendations as to what they think the law is and what they think the instructions should say and they will talk to me about it and demonstrate to me if need be and give me proof as to what they believe the law should be and then I will prepare it in instructions and will sign it as the Judge giving you the instructions as to the law. When I give those instructions to you, although they may have suggested it, it is the Court's instructions and it is my responsibility to give you an accurate instructions and like I say, if I make a mistake in the instructions then the Appellate Court will tell me so. Now, unlike these instructions which are general in nature, the ones that we give at the end of the case are tailored to the particular case and they are very, very carefully drafted even to punctuation with a comma comes where the word they or—could give a possibly wrong interpretation and is very carefully gone over. Therefore, because it is so meticulously prepared I will not attempt to explain or give any additional information about those instructions. I will read them verbatim without making the kind of extemporaneous comments that I am making to you to explain to you in general what these instructions are. I'll just read them without any comment of any kind.

4. It is your duty to determine the facts and to determine them from the evidence and the reasonable inferences arising from such evidence and in so doing you must not indulge in guesswork or speculation, so you see the responsibilities that each of us have here. The lawyers are going to present evidence to us and when the evidence is over—in your hearing for the very first time and you were selected first of all at random and then after an examination. I received the case at random. None of us knows which case we are going to get. You didn't know nor did I nor did the lawyers

but once we're here we receive this evidence and then after the evidence is over I instruct you as to what the law is but I do not instruct you as to what the facts are, you make a determination as to the facts. My instructions will say to you, 'If you find certain things to be true then the law is so-and-so.' If you find certain things to be true then the law is that way, but you see you must make the determination as to what you find to be the facts. Once you make that interpretation, once you've decide a thing is fact that that happened or this did not happen, then I tell you what the law is so the law is standard throughout the State of Missouri and is given to you by me and I must make the final determination but you make the sole determination as to what the facts are and you'll see how this does come together when I read this next paragraph here.

The evidence which you are to consider consists of the testimony of witnesses and the exhibits admitted in evidence. The term witness means any person including a party, Defendant or Plaintiff who testifies and they can testify in two ways, either by written deposition or in your presence at the trial. The admission of evidence in Court is governed by rules of law. Not everything is admissible in a Court of law. You've commonly heard hearsay testimony is not admissible. I heard Mrs. Jones and Johnson said that he saw a man who told me this happened. That's a rank example of hearsay, that is not allowed in a Court and there are many, many, many, many things that are not admissible in evidence in Court. These rules of evidence comprise hundreds and hundreds of volumes of law books and these gentlemen have spent their adult lives and I've tried to learn, too. We couldn't possibly tell you in the two, three, four days you'll be here what these rules of evidence are so we don't attempt to give you a law school education but I'm trying to give you an explanation of fact. These rules of evidence forbid certain kinds of evidence from being presented to you and then that kind of evidence cannot be presented to you.

Now the way that a lawyer objects to evidence indicates that he says that that evidence is not in accordance with the rules and the most common way that this is done is when one of the attorneys will arise generally and will say, 'I object.' And when he says that he may give a reason or the reason may be obvious to me or I may ask him for the reason. In any event, you hear the conversation, the colloquy between us, you hear me ask him and you'll hear the ruling that I make. If I agree with him that it is not admissible as evidence I will sustain the objection, then the question cannot be asked and the answer may not be given. If I do not agree and I think it is admissible evidence before the jury then I will overrule the objection and the question may be asked and the answer may be given. Now that generally doesn't create any problem for most jurors. They hear it, they may not understand the reasoning behind it, but at least they hear all of it. The second way that objections are made does sometimes cause some jurors some discomfort and I've had questions asked about it many, many times. The second way is when one of the attorneys or both of them and in every trial it usually happens many times by one or both attorneys depending on the nature of the case will ask to approach the bench, and there you will see me go to the other side of the bench over here and you will see the reporter take her machine and go over there and the lawyers and I will get into a little huddle and like a football huddle and you will see us talking, you will see the reporter writing, but you won't be able to hear anything that's being said. Now when that occurs it means that a question of law has arisen and the lawyers have asked me to rule in advance as to whether certain evidence is admissible under the rules of evidence and the reason why they ask that is that this evidence may be so prejudicial in its effect on the jury that it will cause the jury to reach a wrong decision. If the jury hears this evidence and it is not admissible it may arrive at the wrong verdict and so I am required under the law to pass on that in advance. I'll give you an example of the kind of thing that it

will be. I'll take an example in the criminal law because—obviously it wouldn't arise here. If a person has a conviction unless that person testifies the jury may not be told about his conviction and therefore, to ask a witness, 'Haven't you been convicted of murder?' And having him say, 'Yes,' would so prejudice the jury that they couldn't decide say the instant case if they are trying a burglary or robbery because in the back of their mind they would say, 'Oh, I heard this man admit he was convicted of murder.' So we want the jury to make the decision on the evidence in this case, not what happened in the murder case but in this case and, therefore, that's the kind of evidence that's not admissible and that would be presented to a Judge in advance who would rule it would not be admissible except under certain circumstances, and there are certain circumstances when it can be admitted. So to make a long story short and without trying to explain and give you many more explanations, what I'm saying to you is that the Judge wants in every case and the lawyers want in every case the jury to hear just as much as they can about the case so they can make an intelligent decision but the rules of evidence prevent you from hearing certain evidence that is so prejudical and it's so prejudicial in its nature that it forces you in one direction or another unfairly so that you cannot give the proper weight to the evidence that you hear in this courtroom and maybe the evidence isn't proper because it's not valid, maybe it's not authentic, maybe it's not accurate. There may be any number of different things. In criminal law polygraphic examinations are not accurate enough to be relied on in Court, so if you learn that a man took a lie detector test and flunked it you might say, 'He flunked the lie detector, he might be guilty,' but the lie detector test is only right one time out of three so it's not reliable evidence, it's not admissible in evidence and the jury cannot hear it. Those are the kinds of things that we keep the jury from hearing when the evidence is not valid enough for you to base your verdict upon it, and we want you to base your verdict as I say on the evidence that you heard in this courtroom and I'll

have more to say about that later. You, not your husband or wife or brother or grandfather or neighbor, but you.

From time to time it may be the duty of the attorneys to make objections and my duty as Judge to rule on those objections as to whether you can consider certain evidence. You must not concern yourself with the objections or the Court's reason for its ruling. You must not consider testimony or exhibits to which an objection was sustained or which has been ordered stricken. Now you are not to hold against either of the attorneys the fact that he makes objections. He's required to make those objections. If he didn't make those objections he'd be criticized by me, the Appellate Court or someplace else along the line. He must make those objections and must come to the bench and point them out to the Court and you shouldn't get mad at him and hold it against his client, whoever he represents, because he does that. He's required to do that. He's playing the game according to the rules and you must follow those rules also. Minor testimony that doesn't have that great impact I may tell you to disregard it, I may order it stricken from the record. I can do that in minor things and you can disregard it and say, 'Well, I won't pay any attention to it,' but if—if major in nature and we're human beings and you couldn't forget certain things and that's why we have to be doing this so very, very carefully.

6. Opening statements and closing arguments of attorneys are intended to help you in understanding the evidence and applying the law but they—that is the opening statements and closing arguments—are not evidence themselves.

7. You must not be influenced in any degree by any personal feeling of sympathy for or prejudice against any party to this suit for each party is entitled to the same fair and impartial consideration.

8. No statement or ruling or remark which I may make during the course of the trial is intended to indicate my opinion as to what the facts are. You are to determine the facts. In this determination you alone must decide upon the believability of the evidence and its weight and value. In considering the weight and the value of the testimony of any witness you may take into consideration the appearance, the attitude and behavior of the witness, the interest of the witness in the outcome of the suit, the relation of the witness to any parties to the suit, the inclination of the witness to speak truthfully or untruthfully, the probability or improbability of the witness' statements and all other facts and circumstances in evidence. Thus, you may give the testimony of any witness just such weight and value as you may believe the testimony of the witness is entitled to receive.

9. Until this case is submitted to you for your deliberation you must not discuss this case with anyone or remain within hearing of anyone discussing it. The reason why you were told to wear those white buttons is to let everybody know that you're on jury duty today. We call upwards of a thousand people each week for jury duty in this building alone and we couldn't possibly know all the people that are on jury duty, but we're all using the same elevators, the same coffee shop, the same halls, same restrooms, and if someone seeing a person on jury duty and seeing that button advising that they are on jury duty will be very careful about what he says because if he doesn't be careful or if he didn't know you were on jury duty he may blurt out some of the things we have talked about, some of these things, inadmissible things and if it happens in the coffee shop or elevator there is no lawyer to object, there is no Judge to rule on it and so you've heard it and you may then reach a wrong decision based on hearing improper evidence. If you remember last week in St. Louis County they had to have a mistrial declared and they had to discharge a jury and start all over again because two of the lawyers, not recognizing jurors, started talking about the case and making statements that were not admissible and it caused a great deal of trouble. Now we don't have—We have very rarely do we have a situation where someone

comes to you and tries to influence your decision as a juror. That happens in television and on radio much more often than it happens in real life. It happens in real life very, very rarely.

Well, what does happen in real life is the thing that happened in St. Louis County where people inadvertently start talking about the case and it creates problems and that's why you're told not to talk about it, not to allow anyone to talk about it in your presence and in the criminal court's cases the Judge gives even more stringent instructions on what you would do, but in every case you must not talk about it nor allow anyone else to talk with you about the case.

I think that they don't explain these buttons to you often enough and I've had jurors take them off and say, 'I don't want to wear them, it points me out, people will be saying things to me and we'll attract attention,' and they don't want to wear them. We don't worry so much about your wearing them when you go home, but around the Court with the thousands of jurors and witnesses and lawyers and everybody else around, that's the only way we have of identifying you as a juror.

<u>After this case has been submitted to you you must discuss this case only in the jury room when all members of the jury are present.</u>

This is a frequent question to me, why can't these two ladies comment to one another, 'What do you think of that witness—I didn't think much of him—I thought he was really very, very persuasive.' You're not allowed to do that until all of the twelve of you go to the jury room and all twelve of you hear the conversation because we want this verdict here to be the verdict of all twelve jurors. Nine of you may return a verdict in a civil case for either side, but we want the entire twelve members of the jury to hear and participate in all of the deliberations so that you will all profit from the comments that are made by everybody.

<u>You are to keep an open mind and you shall not decide any issue in this case until the case is submitted to you for your deliberations under the instructions of the Court.</u>

Now the long instruction—it's longer than most of them, is over now but I think it gives you a fairly good picture of what you are to do and you see your responsibility, the lawyers' responsibility and mine because one of us has certain special responsibilities. You have certain things you do that I don't do and I do certain things that you don't do, et cetera, and that's how we try to arrive at a fair and impartial verdict whatever it may be."