**Tommie Lee DAVIS and Minnie Lee Davis, Plaintiffs-Appellants,**

v.

**Leander C. MOORE, Jr., Defendant-Respondent.**

No. 41290.

Missouri Court of Appeals, Eastern District, Division One.

May 13, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 20, 1980.

Tom Mendelson, University City, for plaintiffs-appellants.

Wayman F. Smith, III, Donald McCullin, St. Louis, for defendant-respondent.

WEIER, Judge.

This is an appeal from a retrial of a wrongful death action brought by the parents of the deceased against a police officer of the City of Kinloch, Missouri. The jury found for defendant and plaintiffs appeal alleging three trial court errors. We affirm the lower court judgment.

The points relied on to reverse the judgment all center around alleged error in instructions presented to the jury or comments made by the trial court during closing argument. Before we address the merits of appellants' points, however, a brief recitation of relevant facts follows. Decedent Lemandris Tyrone Davis was a twenty year old male who resided in Kinloch, Missouri, with his parents Tommie Lee and Minnie Lee Davis. Several officers testified to various encounters they had with the decedent over the course of the year prior to his death in which he had evaded arrest. Officer James Miller, Jr., related an incident occurring in August of 1972 in which Tyrone threw several bricks through the back window of a police car. Officer John Borders testified that in March of 1972 he asked Tyrone to get out of a car, whereupon Tyrone struck him in the chest with a soda bottle and ran away. Officer Borders also testified that in August of 1972 Tyrone was seen standing on a street corner. Numerous arrest orders and warrants were outstanding on Tyrone. Included in these were burglary and stealing, burglary, armed robbery, interference with a police officer and assaulting a police officer. Officer Borders and his fellow officer stopped their vehicle to arrest Tyrone. They placed Tyrone under arrest and called their supervisor Sergeant Leander Moore, the defendant in this civil case. Sergeant Moore arrived shortly thereafter; and when he attempted to put handcuffs on Tyrone, Tyrone broke away from the officers saying, "You all will have to take me. I'm not going to stop." Tyrone successfully escaped the pursuing officers.

On September 23, 1972, Officer Lloyd Simpson and Sergeant Moore were patrol-

ling on duty when they spotted Tyrone again at or near an intersection. Sergeant Moore spotted Tyrone and told Officer ·Simpson to stop because there was an arrest warrant for him. Officer Simpson stopped the car and Sergeant Moore got out and after briefly talking to Tyrone, the decedent backed away, having his hand in his pocket. Sergeant Moore said, "don't do that," after which Tyrone wheeled around and began to run away. Sergeant Moore fired a warning shot into the air and commanded Tyrone to halt. Tyrone continued to flee. Sergeant Moore fired three times and Officer Simpson fired once. Several shots struck Tyrone and resulted in his death.

Tyrone's parents sued Officers Moore and Simpson for wrongful death of their son. After trial the judgment for the defendants was overturned on appeal when prejudicial error was found in permitting defendant's counsel to cross-examine plaintiff-father concerning arrests not in evidence before the jury.[1] Upon remand by the appellate court, plaintiffs proceeded to try the wrongful death action solely against Sergeant Moore. The defendant pleaded and proved, in accordance with the jury verdict, the affirmative defense of necessary means in the shooting and killing of Tyrone Davis. Section 544.190, RSMo 1978.

Plaintiffs first contend that the trial court misled the jury on an issue of law when it sustained and commented on defendant's objection to a portion of the plaintiffs' closing argument. Plaintiffs attempted to define necessary means for the jury in the closing argument. Specifically, the following comment and exchange took place:

"MR. MENDELSON [plaintiffs' counsel]: In any event, we must consider what necessary means are. We have to focus on what the definition of necessary is. The proper definition is 'indispensable', whether defendant Moore satisfied his burden of proof that his shooting, his use of deadly force, was an indispensable—

MR. SMITH [defendant's counsel]: I object to these statements of the law. If he wanted those statements of the law, he should have put them into the instructions."

The court did not sustain the objection at this time but told the jury they were to "take" the law from the instructions. Later attempts by plaintiffs' counsel to define necessary means for the jury met objections which were sustained.

 Plaintiffs' attorney on appeal states that he felt it was crucial for him to present a definition of "necessary" to the jury in light of the varied interpretations of the term. To sustain his position counsel has proceeded to present a plethora of scholarly works amassed to support many definitions in both legal and nonlegal contexts. But, presentation of this myriad of definitions from counsel's lexicon does not persuade us that such an explanation should have been given to the jury. This court addressed the merits of appellants' contention once before when it reviewed an appeal from the original trial of this suit, *Davis v. Moore, supra*. We find our interpretation and application of legal principles and reasoning just as persuasive now as we did three years ago. Because there are an infinite number of factual settings which may give rise to a police officer having to use necessary means to effectuate an arrest, the definition of this statutory term is better left to the triers of fact. The jury, in applying common sense to adjudge the propriety of the methods employed by a police officer to make a lawful arrest, is fully capable of understanding the "everyday wording of the statute ('all necessary means') . . . [which is] without further definition, flexible and adaptable to the factual situation presented." *Davis v. Moore, supra* at 563. Furthermore, the evidence on this second appeal is substantially the same as on the first appeal. Under such circumstances, all of the matters, questions, points or issues adjudicated on the prior appeal are the law of the case and will not ordinarily be considered or readjudicat-

1. *Davis v. Moore*, 553 S.W.2d 559 (Mo.App. 1977).

ed in the second appeal. *Williams v. Ford Motor Company*, 494 S.W.2d 678, 682 [9] (Mo.App.1973). We believe plaintiffs' contention was adequately discussed and decided on the first appeal.

Tangential to this first point, plaintiffs submit that in sustaining defendant's objections to the attempt to define "necessary" in closing argument the trial court misled the jury on the law to plaintiffs' detriment. There were, in fact, several trial court admonitions to the plaintiffs' counsel, restraining him from defining the phrase "necessary force." We do not reach the conclusion, however, that they were prejudicial or that they were even error. The trial court's comments were not gratuitous comments upon the general nature of counsel's argument but, rather, merely resulted from counsel's repeated attempts to argue the law of the case before the jury. The trial court responded to defendant counsel's initial objection to the nature of plaintiffs' argument—that it was a statement of law not included in the instructions submitted to the jury—by informing the jury they would be governed by the instructions. All other trial court comments were prompted by plaintiffs' counsel's insistence that he was merely arguing the law. In light of our prior finding, the trial court's refusal to let the plaintiffs interpret and define the term "necessary force" was proper. Upon reading the trial court's exchanges with counsel in this context, we find no erroneous exercise of judicial discretion.

■ Plaintiffs' second point of error attacks *the submission of an instruction as being superfluous and unwarranted.* At the request of defendant the trial court submitted the following instruction to the jury:

> "The Court instructs you the presumption is that peace officers are in the lawful discharge of their duty in attempting to make arrests."

Plaintiffs contend that because they stipulated to the existence of several outstanding arrest warrants when the decedent was shot, they had conceded the legality of the initiation of the arrest and so the instruc-tion was not necessary. Plaintiffs submit this instruction would be misinterpreted by the jury and result in a presumption that not just the *initiation* but the *whole course of conduct* of the police officer was presumed to be lawful. If this were all of plaintiffs' argument it would have been answered by *Davis v. Moore, supra* at 563. There we said the instruction relates to the lawfulness of the initiation of the arrest procedure and does not relate to what happens during the course of the arrest. If plaintiffs' contention were thus limited, the "law of the case" doctrine would prevail because a question as to the propriety of an instruction, once having been answered on a prior appeal, cannot be raised a second time. *Williams v. Ford Motor Company, supra* at 682 [10]. But the question here rises in a somewhat different posture.

■ Plaintiffs now contend the stipulation to the arrest warrants eliminated any reason to give the instruction on the presumption that the officer's initiation of arrest was lawful. The stipulation with respect to the arrest warrants did not convey to the jury the presumption of the law that the initiation of the attempted apprehension was lawful. The uncontested existence of certain warrants does not carry an implication that initiation of the arrest itself was presumptively lawful. Stipulation by the plaintiffs merely took out of the fact questions to be determined by the jury the issue of whether such warrants ever existed. This would not necessarily cause the jury to conclude that the initiation of the arrest was lawful. It was proper for the jury, when passing upon the legality of the course of conduct a police officer undertook in attempting to apprehend a suspect, to be made aware that the initiation of such action was presumptively legal. There is a common law presumption that a police officer is lawfully discharging his duty. *Walsh v. Oehlert*, 508 S.W.2d 222, 224 [1] (Mo.App. 1974). The police officer's right to such an instruction embodying this presumption, if timely requested, should not be dispensed with upon a stipulation that a warrant had been issued.

Lastly, appellants claim trial court error in its failure to read the correct introductory instruction to the jury. The Missouri Supreme Court has provided an explanatory instruction, Missouri Approved Instruction 2.01, which is to be read by the trial judge immediately after the jury has been sworn and before opening statements by counsel. In the spring of 1978, the Missouri Supreme Court published an order to make effective on July 1, 1978, numerous revisions and additions to the MAI Civil Instructions, 34 Journal of Mo. Bar (April-May-1978) 191. Among the changes was a redrafted explanatory instruction, also numbered 2.01. At the second trial of the instant case, on October 2, 1978, the trial court read the old MAI 2.01 to the jury rather than the new one required to be used after July 1 of that year.

Rule 70.02(c) states in part "[t]he giving of an instruction in violation of the provisions of this Rule shall constitute error, its prejudicial effect to be judicially determined." Yet, while a deviation from the approved instruction is presumptively prejudicial, *Means v. Sears, Roebuck and Company*, 550 S.W.2d 780, 786 [1] (Mo. banc 1977), such error is not reversible if there is a showing that no prejudice resulted therefrom. *Brown v. St. Louis Public Service Company*, 421 S.W.2d 255, 259 [3] (Mo. banc 1967).

Our review of the changes in the new MAI 2.01 convinces us that there has been no prejudice against either party. Comparing the material provisions in the new MAI 2.01 with the old instruction, we note that every paragraph in the new 2.01 is, in substance, a duplication of the matters contained in the old instruction.

Prior appellate court opinions which have found prejudicial deviations from the required MAI 2.01 explanatory instruction are based upon omissions of a material directive to the jury. For instance, in *Chapman v. Bradley*, 478 S.W.2d 873 (Mo.App.1972), prejudicial error was found when a version of MAI 2.01 was submitted that omitted to inform the jury that it could draw reasonable inferences from the evidence, that it could consider the interest of a witness in the outcome of the suit and the relation of a witness to any parties to the suit. The evidence disclosed one of the witnesses was plaintiff's mother. In *McCory v. Knowles*, 478 S.W.2d 682 (Mo.App.1972), the same cautionary instruction failed to include the same directions and a key witness was the plaintiff's husband. Again, in *City of Jackson v. Barks*, 476 S.W.2d 162 (Mo.App.1972), the same omission and deviation in MAI 2.01 was deemed prejudicially erroneous. In this condemnation case one of the valuation witnesses was shown to be hostile to plaintiff city. This representative sampling of cases where prejudice has been found supports the principle expressed in *McCory v. Knowles, supra* at 686 [7]. "Trivial imperfection and slight deviation are not enough to create prejudicial error in MAI instructions. The test is not absolute perfection in form. Rather, it is whether the instruction is substantially correct."

When the deviation cannot cause error in the jury's decision-making process, it is not prejudicial. Such is the situation now before us. Although the script has been rewritten and the instruction in its form improved, every comment and admonition in the new instruction had been addressed in the old instruction. We have examined the course and conduct of the trial and the evidence submitted in this case to determine whether the failure to submit the improved version could have resulted in prejudice and can find none. Reversal of a case that has been tried twice with the same result because of an error that we find harmless would be a useless gesture. We have determined that no prejudice resulted from this deviation.

The judgment is affirmed.

STEWART, P. J., and CRIST, J., concur.