CHARLES O. PROCTOR, RESPONDENT, v. HOME TRUST COMPANY, APPELLANT.

Kansas City Court of Appeals.  May 3, 1926.

*Marley & Reed* for appellant.

*Moore & Johnson* for respondent.

ARNOLD, J.—This is an action in conversion. The facts shown are that plaintiff is a resident of Westport, a part of the City of Kansas City, and defendant is a corporation engaged in the banking business in Kansas City, Mo.

In February, 1922, one Curtis M. Amos, purchased a garage from Ernest Augustine, and in payment therefor Amos and his wife, Margaret, executed their promissory note in the sum of $1129, dated February 14, 1922, payable in monthly installments of $150 each, beginning August 15, 1922, with six per cent interest on the unpaid balance. In order to make the deal, Mr. Augustine had to have the money which the makers of the note did not have. Plaintiff herein was solicited to buy the note but was unwilling to do so unless it was secured in some way as it was considered by him to be worthless without security. It was agreed that if plaintiff would buy the note, a note for $7000 dated March 4, 1920, payable in monthly installments of $150 at six per cent would be put up as collateral. This note, payable to Curtis M. Amos and Margaret Amos, or order, executed by Agnes Smith, was accepted by plaintiff as collateral security for the $1129 note. The $7000 note was about half paid at the time of the purchase of the $1129 note by plaintiff and was subject to a prior lien of approximately $700 in favor of the Central Exchange Bank of Kansas City, Mo. Thereafter the Central Exhange Bank was taken over by defendant herein.

Plaintiff testified that Mr. Amos took him to the Central Exchange Bank and introduced him to Mr. Honan, cashier of said bank, and that Mr. Amos told Honan what was wanted, to the effect that the note

for $1129 was to be left with the bank for collection to the end that when the payments made on the $7000 note had extinguished the indebtedness of Amos and his wife to the bank, the payments made thereon were to be applied to the payment of the $1129 note; that plaintiff and Amos talked to Honan who agreed to the arrangement and accepted the $1129 note, giving plaintiff a receipt therefor, as follows:

"February 24, 1922.

"Received of C. O. Proctor note dated February 14, 1922, signed by Curtis Amos and Margaret Amos, amount $1129 for collection and credit.

"CENTRAL EXCHANGE NATIONAL BANK,
"Kansas City, Missouri,
"By H. C. HONAN, Cashier.

"Nathan Rieger.
"O. K. Home Trust Co.
"By Sievers (?)
"Collect and credit a/c O. C. Proctor."

H. C. Honan, testifying for plaintiff, stated that in February, 1922, he was cashier of the Central Exchange Bank; that he recalled the conversation with plaintiff relative to the two notes in question; that plaintiff said he wanted to leave the $1129 note with the bank, "the arrangement being after the indebtedness had been paid to the Central Exchange Bank, if any payments might be made by Amos, such payments would be endorsed on the $1129 note" of plaintiff and placed to plaintiff's credit in the bank. The witness testified that the indebtedness of Amos to the bank was eventually paid; that he does not remember whether the $700 indebtedness was all paid off at the time of the merger of said bank with the Home Trust Company; that Mrs. Margaret Amos came to the bank to borrow some more money; that on account of having talked to plaintiff before about the matter, he suggested to Mrs. Amos that it would be well to get in touch with him; this witness called plaintiff by telephone and plaintiff said it would be satisfactory to him to make Mrs. Amos the additional loan to the amount of $300, which was done.

On this point, plaintiff testified that in the telephone conversation which was with Honan, that he told Honan that if the amount of the additional loan to Mrs. Amos did not reduce the unpaid balance of the collateral note to a point under $300 in excess of the $1129 note, it was all right with him. The testimony shows that at the time the additional loan of $300 was made to Mrs. Amos, Mr. Amos was ill in a hospital and that he died soon thereafter.

It is admitted that the bank in question was consolidated with the Home Trust Company though the date of such consolidation is not shown in the record. Plaintiff testified that he saw in a daily paper

that the Home Trust Company had taken over the Central Exchange Bank and that he went to the Trust Company and there learned that the consolidation had occurred; that on inquiry one of the directors was pointed out to him; that he talked to the individual designated and the following occurred:

"I told him I had an account up there and asked him if they had it down there and he said 'Yes,' they had it there, and lots of people were coming and going and he went back and came back and he said $600, and I told him that was all right; and I told him I had a note there for collection, Agnes Smith note, she is paying Mr. and Mrs. Amos and he hunted it up and it was in the same envelope and showed them to me, and they said they would do anything the Central Exchange would do, and I said, 'all right, I'll leave it here for collection,' and I says, 'Give me a receipt for it.' I showed him that (indicating). He fixed up a piece of paper and started to write one and then he crumpled one and then he said 'We will do anything the Central Exchange agreed to do,' and recrumpled it and threw it in the waste-basket and put his name down here."

The statement "and put his name down here" obviously refers to the O. K. subtended to the receipt above quoted. Witness did not know Mr. Nathan Rieger personally. The signature of Mr. Rieger to the O. K. is admitted. Plaintiff stated that the man who put the O. K. on the receipt is the one with whom he talked on that occasion and doesn't know whether it was Rieger; but that another man in the bank put the O. K. there; that the person with whom plaintiff talked said he would do anything the Central Exchange Bank would do; that he went back to the Home Trust Company in a week or ten days and again saw the man with whom he had talked and that man went to the files and found both the notes in question were in the same envelope; that plaintiff then told him to collect and deposit the proceeds to plaintiff's account and that the man said he would do anything the Central Exchange Bank would do; that witness went back a second time and again was shown the envelope which contained both notes; that Mr. Rieger was the man with whom he talked all the time, and that Rieger said he would collect the Agnes Smith note and credit the same to plaintiff's account. Plaintiff waited about a month and not receiving word of any collections or credits, again went to the Home Trust Company and talked with the same man; that the man went back to the cage a third time and then saw that the note securing the Augustine note was gone; that the man asked a woman clerk what had become of it and she searched and could not find it; that the man pressed her to know what had become of it and she said she had given it to Mrs. Amos. Thereupon plaintiff procured an attorney. Later, he went to the bank with his attorney and at that time the woman clerk repeated she had given the collateral note to

Mrs. Amos; that Mrs. Amos had asked for it. Plaintiff stated he had no notice prior to the time he went and asked for the note.

T. A. Frank Jones, attorney for plaintiff, testified that after the discovery that the Home Trust Company had turned over the collateral note signed by Agnes Smith and which had been left by plaintiff at the bank for collection, he went to the Home Trust Company and made formal demand that both the collateral note and the note for $1129 be returned to plaintiff; that he went to an officer of the bank and told him that he came on plaintiff's behalf to make formal demand for the collateral note which the bank held as security for the $1129 note; that the officer went to the cage where a woman was performing the duties of collection teller; that the bank officer asked her about the Proctor note and she produced some papers out of an envelope, among which was the $1129 note; witness then stated it was not that note but the collateral note he came to demand and that the answer of said officer or the woman clerk, or both, was that they had no such note, knew nothing about it, and had no collateral note to return. This suit followed.

At the close of plaintiff's case the defendant asked and the court refused a peremptory instruction to find for defendant.

Defendant then introduced Mrs. Margaret Amos as a witness. She testified she owner the Lee hotel in Kansas City, Mo., and had run it and then sold it to Agnes Smith; that no one was associated with her in this hotel; that she took the $7000 note in question as part payment for the purchase price of the hotel. On direct examination, the following occurred:

"Q. I notice the note reads 'Curtis M. Amos and Margaret Amos. What, if any, interest did your husband have in the hotel?

MR. MOORE: "We object to that. The note speaks for itself. It would be immaterial—wait, we object to that for the further reason that it calls for a conclusion of the witness.

THE COURT: "Yes, sir. It will be sustained."

Exception to this ruling was noted and again the witness was interrogated, as follows:

"Q. Now I notice that the note is made to Curtis M. Amos and Margaret Amos? Why was it made that way?

MR. MOORE: "We object to that. The note speaks for itself. It calls for a conclusion of the witness.

THE COURT: "Sustained. If she knows about the transaction she may testify to what occurred."

The witness further stated she never knew of any arrangement by anybody with the Central Exchange Bank whereby the said bank was to make collections on the $7000 note and apply same on the $1129 note. She denied having given permission to the bank or anyone to apply the collections to the payment of the $1129 note; and had no knowledge that said note was deposited in the Central Exchange

Bank; and as to the ownership of the Lee Hotel, she stated her husband never did run the same, nor work therein, nor contribute anything towards its operation. She further denied that any demand was ever made on her for payment of any or all of the $1129 note; denied knowledge of the Central Exchange Bank holding the Agnes Smith $7000 note as collateral; denied hearing Honan say anything about having to consult Proctor relative to the additional loan of $300 to her by the bank; admitted demanding of the Home Trust Company the Agnes Smith note and stated the same was surrendered to the Commerce Trust Company, where it was finally paid.

At the conclusion of the testimony of Mrs. Amos, defendant asked and the court refused a peremptory instruction in its behalf.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $1315, including interest. Motions for new trial and in arrest of judgment were unavailing and defendant appeals.

In support of the appeal, it is urged the court erred in refusing defendant's peremptory instructions at the close of plaintiff's case and again at the close of all the evidence, for the reason that plaintiff failed to allege and prove that he was in possession of, or was entitled to possession of the Agnes Smith note at the time of the alleged conversion. The petition alleges that plaintiff held the Agnes Smith note as collateral for the $1129 Augustine note, subject only to the prior lien of the Central Exchange Bank and that he left the Augustine note, together with the collateral note, with said bank for collection and that defendant bank accepted and made its own the promises of the Central Exchange Bank to the effect that after about $700 was paid, further payments would be credited on plaintiff's note.

We think there is no question but that the petition states a cause of action in conversion, and that the proof offered was sufficiently substantial to take the case to the jury. The testimony in plaintiff's behalf tends to show that the prior lien of the bank had been satisfied before the alleged conversion took place. Plaintiff's theory, upon which he tried his case, was that as soon as the bank's prior lien was paid, plaintiff became entitled to possession of the collateral note. Demand was made therefor, as shown by the evidence, and was refused. The legal conclusion follows that if plaintiff was entitled to the collateral note, after the lien of the bank was satisfied, as charged in the petition, and as plaintiff's testimony tends to prove, and defendant failed to return it to plaintiff, the bank converted same.

In the case of Manufacturing Co. v. Electric Co., 184 Mo. App. 247, 271, the court said:

"Where one is entitled to the immediate possession of personal property, a demand therefor and refusal to surrender possession con-

stitute prima-facie evidence of a conversion. But the demand must be peremptory and clothed in absolute unequivocal terms.''

See, also, Herman v. Horn, 36 Mo. App. l. c. 422, where it is said:

''In an action for conversion, if the petition avers a wrongful or tortious taking, it is sufficient. Proof of the wrongful taking establishes the conversion. . . . The petition in this case avers the wrongful taking of the property by the defendants, which, if true, constituted a good cause of action for conversion.''

A wrongful assumption of property is not merely evidence of, but actual conversion. [Warnick v. Baker, 42 Mo. App. 439. Ireland v. Horseman, 65 Mo. 511; Pitcock v. Higgins, 239 S. W. 870; Esenberg v. Nelson, 247 S. W. 244.]

It is true that in her testimony Mrs. Amos denied the material facts presented by plaintiff's evidence, but this situation merely resolves itself into a question for the jury. We must hold that the petition pleaded a case in conversion and that plaintiff presented substantial evidence in support of his cause of action. There was therefore no error in refusing the peremptory instructions. We have examined defendant's citations on this point but find therein nothing in conflict with the above ruling.

It is urged that a note made to a husband and wife for the wife's property does not create an estate in the entirety and is not deemed to be reduced to the husband's possession; and even if it were an estate in entirety, upon the husband's death, the wife would own the note. Cases are cited in support of this well-known principle of law. We hold that any question of the rights as between Amos and his wife, or the wife's claim against the estate of Amos are not embraced in the pleadings or evidence submitted, and are, therefore, not involved in this action.

It is noted that the $1129 note was signed by both Amos and his wife and that the collateral note was payable to both. It is defendant's contention that the collateral note was the property of Mrs. Amos, that it had been taken by her in payment for a hotel owned by her, and that she testified this note was not placed in the bank by her as collateral for payment of the $1129 note; that if Amos placed it there as collateral she did not consent thereto and she was entitled to possession of it. However, there is evidence tending to show that both Mr. and Mrs. Amos were at the bank and knew of plaintiff's claim to said note as collateral and consented thereto. We hold this point is without merit.

A point is attempted to be made of the fact that at the time the Agnes Smith note was left with the bank for collection the bank was not a holder in due course, but held the note subject to the rights of Margaret Amos to its possession. It is the law that an endorsement is unnecessary under a state of facts such as is here presented. This

point was determined against defendant's contention in Goodman v. Freie, 264 S. W. 34, where it is said:

"It appears that the note sued on was not indorsed by Mrs. Freie. The evidence, however, tends to show that Mrs. Freie gave it and plaintiff received it in payment of money loaned and money advanced for depositions, as well as for services rendered. It is the settled law in this State that a written assignment or indorsement is unnecessary to convey title to commercial paper or to enable the holder to sue thereon in his own name as the real party in interest. [Willard v. Moies, 30 Mo. 142; Bocka v. Nuella, 28 Mo. 180; Lipscomb v. Talbott, 243 Mo. 1, 1. c. 31, 147 S. W. 798; Bank v. Stam, 186 Mo. App. 439, 1. c. 444, 171 S. W. 567.]"

It is charged the court erred in admitting evidence tending to modify the written receipt for the $1129 received by the Central Exchange Bank. We think this contention is without merit. In the first place, the suit is not based upon the receipt presented in evidence and the purpose of introducing it was to corroborate the verbal agreement relied upon. That the receipt was issued is not controverted by defendant. No doubt the trial court held that the testimony introduced over defendant's objection tended neither to modify nor contradict the terms of the receipt. It is the law that contemporaneous parol evidence is not admissible to contradict or vary the terms of a written instrument, yet the writing must be read in the light of surrounding circumstances for the purpose of determining its intent and meaning, and such circumstances may be shown by parol evidence. It was so held in Publishing Co. v. McNichols, 170 Mo. App. 709, 153 S. W. 562; Brown v. Bowen, 90 Mo. 184.

On this point, it is further urged by defendant that all the testimony as to what took place after the receipt for the $1129 note was issued was incompetent because it could not change the status of the parties fixed by the terms of the receipt. We have already answered this argument in what we have said herein and need not discuss the question further. Likewise the next point urged by defendant, to the effect that evidence as to transactions between Amos and Augustine was incompetent because Amos was dead. The record discloses no testimony that would be incompetent as to conversations between the plaintiff and Amos and defendant does not specifically point out the evidence he deems violative of the rule.

It is claimed testimony was admitted as to transactions between third parties which did not in any manner bind the bank, being hearsay, or *res inter alios*. The record discloses no such testimony and as defendant fails to point it out specifically, we need not discuss it.

That plaintiff's instruction No. 1 is erroneous in three respects is charged, as follows: (a) because there is no evidence of conversion, (b) because plaintiff cannot sue on one theory and recover on another

and (c) because the instruction is broader than the issues made by the pleadings. As to subdivisions (a) and (b), we need not discuss them for the reason that they have already been determined against defendant's contention in what we have said herein. As to subdivision (c) defendant does not state specifically wherein it offends, but does say

"it involved a theory other than that of the petition and because it is broader than the issues made by the pleadings and involved facts admitted in evidence by the court not included in the allegations of the petition."

Counsel seems to have been content with this broadside argument against the instruction but does not enlighten the court as to his specific complaint. Under such circumstances it is hardly reasonable to require of this court that it shall search for errors to which no more specific charge is directed.

It is declared by defendant that error was committed in the refusal of defendant's instruction "E" after the case had been fully argued. The record discloses this instruction was offered after the opening argument by plaintiff. Instructions may be offered at this stage of the proceedings and given without error, if otherwise proper. The record shows there is nothing in this instruction not covered by other instructions in the case. Its refusal was proper for that reason, if for no other.

Defendant contends that evidence tending to show the worthlessness of the $1129 note in question was erroneously admitted and was prejudicial. The admission by the court of this evidence, doubtless, was for the reason that it tended to establish the theory of the petition, to-wit, that plaintiff would not have purchased the $1129 note unless it was supported by collateral. Upon this theory the admission of the evidence was proper. Finally, it is charged the evidence fails to show any contract upon which plaintiff can found any claim to, or in, the Agnes Smith note. We have already decided this point against defendant's contention and need not discuss it here.

We find no reversible error of record. The judgment is affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.