John JORDAN, Plaintiff-Appellant,

v.

Clarence EBERT, Defendant-Respondent.

No. 31729.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1965.

Robert B. Baker, Ellington, for plaintiff-appellant.

William H. Bruce, Jr., Centerville, for defendant-respondent.

SAMUEL E. SEMPLE, Special Judge.

This is a suit brought by plaintiff, the appellant herein, for the conversion of a 1951 Ford automobile by defendant. The defendant filed a counterclaim asking for a reasonable allowance for storing the automobile and for other damages. A trial before a jury was had and at the conclusion of plaintiff's case, the trial court directed a verdict for the defendant and entered a judgment thereon without disposing of defendant's counterclaim. Plaintiff filed an appeal to this court. Thereafter this court of its own initiative dismissed the appeal as being premature. Thereafter plaintiff filed a Motion to Dismiss defendant's counterclaim and the same was submitted to the trial court and taken under advisement. Five days later the trial court entered an order granting defendant leave to file a dismissal of his counterclaim and ordered the counterclaim dismissed without prejudice. The court in the same order overruled plaintiff's Motion to Dismiss. Plaintiff again appeals from the judgment for the defendant on plaintiff's cause of action entered by the trial court.

The plaintiff's principal contention is that the trial court erred in directing a verdict for the defendant at the close of plaintiff's evidence, therefore the evidence will be set out in some detail.

Plaintiff's evidence revealed that he was the owner of a 1951 Ford four door sedan and that he had loaned the car to his son, Jackie Jordan, several weeks previous to March 15, 1961. On the evening of March 15th plaintiff's brother, George Jordan, his wife, and two daughters, while driving on Highway 21 past the Catholic Church near Lesterville, Missouri, saw plaintiff's 1951 Ford sedan parked beside the road. The next day, George Jordan, his wife, daughters, and a Mrs. Bequette, drove back to check on the automobile. The car was still parked at the side of the road in the same place. George Jordan checked the car, tested the lights, and found that the battery was down. Later in the day Jordan and a Mr. Bequette went to the car and with Jordan driving and Bequette pushing with his car, the plaintiff's Ford was pushed up the road about a quarter of a mile to Mr. Bequette's trailer located about 100 yards from defendant's garage and filling station. George Jordan told plaintiff where his car was parked. On March 17th, the car was observed still parked by the Bequette trailer. On March 18th, plaintiff drove a truck he owned to his son's home and picked up the keys to the Ford and drove to where it was parked by the Bequette trailer. Plaintiff took a battery out of his truck and put it in the Ford, started the motor, checked the car and found that it was running in good shape. About that time defendant Ebert and his two teenaged sons came over from the filling station and asked when plaintiff was going to pay what he owed. Plaintiff replied that he had been

out of work and did not have any money in his pocket but would pay the bill as soon as possible. Defendant then informed plaintiff that he was going to keep the car until he was paid and told plaintiff "Leave it sit right there, I mean business." Plaintiff said that he would be back and that the car had better be there when he got back. Plaintiff removed the keys to the car and the battery he had installed and left. Later plaintiff returned with his brother, George Jordan, and Mr. Bequette, and found that his car was gone and upon investigation saw it parked in defendant's garage. Thereafter plaintiff tried without success to obtain help from the prosecuting attorney to recover his car. Plaintiff testified that he had owed defendant a bill in the amount of $26.30 for a tire and gasoline for some six months. That after going to the prosecuting attorney he went to a finance company and borrowed $26.30 and had the company send the money to defendant. That he had never given anyone authority to store his car and the car was never returned to him by defendant. On April 6th he found his car between two roads about fifty yards from defendant's garage with two flat tires, and had it pulled to the Woods Garage.

Plaintiff further testified that an examination was made of his car at the Woods Garage and discovered that the back seat was out and the tools in the trunk were gone; that damage was done to the chrome dashboard and it was necessary to wire around the switch to get the car started. That after getting the motor started it ran rough; that he took the car home and let it sit over night. The next day he drained the oil from the crankcase and observed that about a half pint of water came out ahead of the oil. That after putting in fresh oil the motor ran rough and didn't have any power. There was no direct evidence introduced or proof offered by plaintiff as to the amount of the damage to the automobile in terms of money. On the basis of this evidence the plaintiff rested and the court thereafter

directed a verdict for defendant. The defendant has not filed a brief in this court.

It appears that plaintiff's contention that the trial court erred in directing a verdict for the defendant is well taken and it is concluded that plaintiff did make a submissible case of conversion by the defendant of plaintiff's automobile.

Plaintiff, to make a submissible case for conversion, was required to present evidence (1) of his possession or right to possession at the time of the alleged conversion or an ownership which carries with it the right to immediate possession. Brede Decorating, Inc. v. Jefferson Bank and Trust Co., Mo., 345 S.W.2d 156, 164; (2) of the taking of the property of plaintiff against his will and in open defiance of plaintiff's ownership and right of possession. Detmer v. Miller, Mo.App., 220 S.W.2d 739, 745; Davis v. Nash Central Motors, Mo.App., 332 S.W.2d 475, 480, and (3) damages resulting from the act or acts of conversion. With respect to damages it should be noted that " * * * [a]lthough no actual loss is shown, if there has been a technical conversion the defendant is liable for at least nominal damages." Schulte v. Florian, Mo.App., 370 S.W.2d 623, 626, and authorities therein cited.

The plaintiff in this case presented substantial evidence that he owned the 1951 Ford sedan and was actually in physical possession of it on March 18, 1961, that on the same date defendant did in a threatening manner forbid plaintiff to move his car from where it was parked by the Bequette trailer and shortly thereafter plaintiff's car was observed parked inside of defendant's garage some 100 yards from where plaintiff left it. Such acts were in opposition to the rights of plaintiff and constituted an actual conversion of plaintiff's property. Schulte v. Florian, supra; Proctor v. Home Trust Co., 221 Mo.App. 577, 284 S.W. 156, 159. It should be noted that the plaintiff recovered his automobile approximately three weeks after defendant

assumed possession. However, the fact that defendant did not permanently deprive plaintiff of his property is not required to make out a technical case of conversion. The recovery of the property could operate only in mitigation of damages and not as a bar to the action. Schulte v. Florian, supra, and authorities therein cited.

With respect to the element of damages, plaintiff offered evidence that the back seat of the car had been torn out, that the chrome on the dashboard had been cut, that the starter switch would not work, that the crankcase had water in it and the motor did not have any power. There was no proof of physical damage to the car in terms of money. However, even though no actual monetary loss for physical damage to the car was shown in evidence, the fact that there had been a conversion entitled the plaintiff to at least nominal damages. Schulte v. Florian, supra. It is therefore concluded that plaintiff made a prima facie case and was entitled to have the same submitted to the jury.

Plaintiff appears to contend that because defendant did not introduce any evidence in support of his counterclaim at the time of the trial that his subsequent voluntary dismissal thereof operated as a' dismissal with prejudice. Plaintiff argues that as defendant failed to assert his counterclaim at the time of the trial he waived any right to later voluntarily dismiss the counterclaim without prejudice and thus have the opportunity to reassert it at a later time. The transcript shows that at the conclusion of plaintiff's evidence the court declared a recess, the defendant filed a Motion for Directed Verdict, and the court of its own motion gave Instruction A directing the jury to return a verdict in favor of defendant and against plaintiff. That when court reconvened after a short recess the. court explained to the jury that the plaintiff had failed to make a case at law against defendant and that he was directing a verdict in favor of defendant and against plaintiff and directed a member of the jury as appointed foreman to step up and sign the verdict. Thereupon the court announced the day's trial was concluded. There is nothing in the record as to whether defendant asked to proceed on his counterclaim or whether the parties and the court even considered the question of disposing of the counterclaim at that time. We are unwilling to state on the record of this case that defendant either intentionally or inadvertently failed to assert his counterclaim. A counterclaim may be voluntarily dismissed (Civil Rule 67.04, V.A.M.R.) under the same conditions that a plaintiff may dismiss his action without prejudice (Civil Rule 67.01, V.A.M.R.) and thus a defendant may dismiss his counterclaim without prejudice at any time before the same is finally submitted to the jury. In this case, the counterclaim not having been finally submitted to the jury and there having been no previous dismissals without prejudice, Civil Rules 67.01 and 67.04, V.A.M.R., the defendant properly obtained a voluntary dismissal of his counterclaim without prejudice.

For the reasons set out herein, the judgment of the trial court is reversed and the cause remanded for a new trial.

RUDDY, P. J., and WOLFE, J., concur.