**STATE of Missouri, ex rel., STATE HIGHWAY COMMISSION of Missouri, Respondent,**

v.

**Virgil P. ZAHN, et al., Exceptions of Perry McKay Brooks, et al., Appellants.**

No. WD 32214.

Missouri Court of Appeals, Western District.

March 30, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

Application to Transfer Denied June 14, 1982.

Tut Bellamy of Bellamy & Bellamy, Marshall, for appellants.

Bruce A. Ring, Chief Counsel, Earl H. Schrader, Jr. and James B. Jackson, Asst. Counsel, Missouri Highway & Transportation Comm'n, Kansas City, for respondent.

Before SOMERVILLE, C. J., and SHANGLER, DIXON, TURNAGE, MANFORD, KENNEDY and NUGENT, JJ.

MANFORD, Judge.

This appeal follows a jury award for damages in condemnation proceedings. The judgment is affirmed.

Points of error presented, in summary, allege the trial court erred because it (1) permitted counsel to commence argument before instructing the jury; (2) sustained respondent's motion in limine the morning of trial, thus giving respondent an unfair advantage; and (3) sustained respondent's motion in limine, thus excluding evidence as to damages suffered by appellants due to change of access.

These proceedings arose from the acquisition of land for Route 240 in Saline County. The date of taking was January 5, 1973. The appointed commissioners awarded $7,000.00 damages. This sum was drawn down by appellants. The jury entered an award of $5,000.00 and this appeal followed.

■ This case was argued initially in division before this court, and when agreement could not be reached by the proper procedure, the matter was submitted to an expanded panel. This case illustrates what the court surmises to be a rather common situation, that is, where an award by commissioners is entered, the landowners draw down the funds, the parties individually or collectively file exceptions, and the issue is tried to a jury which enters an award less than the commissioner's award. This situation is precisely what occurred in the instant case. That factor, however, can never be permitted to serve the basis upon which the reviewing court enters its final determination.

Another matter which deserves mention is that neither this court nor any other court is empowered to guess, speculate or hypothesize what any witness at trial might or could have said but did not.

In addition to the foregoing, when this case was argued before an expanded panel, counsel for appellants, when questioned by the court, conceded that the element of damages regarding appellant's easement was in fact submitted to and for consideration by the jury. This factor, as will be observed infra, is important in the disposition of appellants' point (3).

Attention is now directed to appellants' point (1).

In support of point (1), appellants present argument without citing germane authority. The court gave Instruction No. 1 (MAI 2.01) before the trial commenced. At the close of the evidence, appellants' counsel was permitted to proceed with his final argument. Shortly after appellants' counsel began his argument, opposing counsel interrupted and called the court's attention to the failure to instruct the jury. The court recognized the omission, admonished the jury to disregard appellants' counsel's remarks, submitted the proper instructions and *permitted counsel to start over with his argument.* Appellants contend that this "false start" prejudiced them by precluding the jury from considering their argument. The court did not limit appellants' argument from the point of interruption forward, rather, appellants were permitted to submit their argument in its entirety. As noted above, appellants fail to support their argument with any authority, and research upon this point fails to reveal any authority since the inception of MAI. Reference to pre-MAI authority shows no error when instructions were given after the opening of final argument. *Dyer v. Griffith*, 261 S.W. 100, 105 (Mo.1924); *Shaw v. Mutual Protective Ins. Co.*, 9 S.W.2d 685, 688 (Mo.App. 1928) and *Proctor v. Home Trust Co.*, 221 Mo.App. 577, 284 S.W. 156, 160 (1926); but in light of the mandatory nature of MAI, reliance upon such authority is not warranted.

When the failure to instruct the jury was called to the court's attention, the proper instructions were submitted. MAI 2.03 was submitted first. The notes on use (MAI 2.03) state: "This instruction is to be given in every case as the first instruction after the close of the evidence. It should be numbered Instruction Number 2 following MAI 2.01 which is Instruction Number 1."

■ While the giving of an instruction in violation of MAI constitutes error, the prejudicial effect is to be judicially determined. *Davis v. Moore*, 601 S.W.2d 316, 320 (Mo. App.1980); *Salsberry v. Archibald Plbg. & Heat. Co. Inc.*, 587 S.W.2d 907, 915–917 (Mo.App.1979); and Rule 70.02(c). Appel-

lants' citation of *Washington v. Sears, Roebuck & Co.*, 585 S.W.2d 137 (Mo.App.1979) is inapposite. That case holds it is reversible error for the trial court to embellish and interpret MAI 2.01. Such action by the court constituted an impermissible deviation from MAI.

■ Appellants' counsel was interrupted shortly after commencement of his final argument. The court submitted the proper instructions.[1] Appellants' counsel was permitted to start again and was not limited to merely continuing his argument from the point of interruption. He started his argument anew, and the jury received the argument in toto. While the court's failure to submit instructions at the close of the evidence and prior to argument (MAI 2.03, Notes on Use) was error, there was no showing of prejudicial effect on appellants under the facts and circumstances of the instant case. Point (1) is found to be without merit and is ruled against appellants.

In their point (2), appellants argue that by sustaining respondent's motion in limine the morning of trial, the trial court gave respondent an unfair trial advantage. The motion, which was offered before trial and sustained by the court, prohibited evidence on the issue of circuitous routes as a matter of compensable damages. This particular motion is further challenged under appellants' point (3), but as it concerns the current alleged error, the challenge is made that the court's sustaining of the motion the morning of trial provided an undue advantage to respondent. Respondent argues that appellants were not disadvantaged by the motion, but instead, benefitted from respondent's not waiting and presenting an objection upon trial to evidence on the issue of circuity of route.

■ Appellants cite no rule or authority in support of their argument that the motion was untimely. Research has failed to reveal any authority on the point. The absence of citation of authority indicates that there is none. *Bishop v. Bishop*, 618 S.W.2d 261 (Mo.App.1981); *Willett v. Reorganized School District No. 2*, 602 S.W.2d 44, 47 (Mo.App.1980); and if a point asserted is one of first impression, litigants are advised to so state, accompanied by an explanation of the lack of citation of authority. *Thummel v. King*, 570 S.W.2d 679, 687 (Mo.banc 1978). Rule 84.04(d) does not require citation of authority in each instance. However, as observed by the Missouri Court of Appeals for the Southern District, "[the] absence of relevant authority for alleged points of error ordinarily justifies the appellate court to consider the point as being abandoned." *Claspill v. City of Springfield*, 598 S.W.2d 183, 186 (Mo.App.1980) [citing to *Thummel v. King, supra*, at 687].

Appellants argue that the timing of the motion (the morning of trial) prevented consideration of leading authority cited in support of the motion.[2] This argument, when considered with the fact that this case had been pending some seven years (1973–80) and that the authority cited by respondent was and remains leading authority in condemnation proceedings involving the issue of access, indicates that it is argument without substance or merit.

Point (2) is ruled against appellants.

In their final argument, appellants contend that the court erred in sustaining respondent's motion in limine because in so doing, it prevented appellants from submitting material and relevant evidence as to damages to the subject property resulting from respondent's alteration of appellants'

---

1. While neither party challenges the sequence of instructions given, this court observes that MAI 2.02, the "facts not assumed" instruction, was out of sequence. Such failure has been held to be error, but not reversible error, provided no prejudice results. *Morse v. Johnson*, 594 S.W.2d 610, 615 (Mo.banc 1980); *Salsberry v. Archibald Plbg. & Heat. Co., Inc., supra; First State Bank of Joplin v. Brown*, 577 S.W.2d 431, 432 (Mo.App.1979); *Doyle v. St.*

*Louis-San Francisco Railway Company*, 571 S.W.2d 717, 724 (Mo.App.1978). But compare *Crystal Tire Co. v. Home Service Oil Co.*, 525 S.W.2d 317, 321–322 (Mo.banc 1975).

2. Respondent's motion relied upon *Christy v. Chicago, B. & Q. R. Co.*, 212 S.W.2d 476 (Mo.App.1948), a leading authority on the issue of circuity of route as compensable damages in condemnation proceedings.

access to the property. The pertinent portions of respondent's motion asked the court to delete the following:

"Reference to any and all damage to the subject property due to the need by the landowner, . . . to travel a greater distance to any certain destination due to plaintiff's alteration of defendant's access. Such damages are for a more circuitous route and are, therefore, not compensable and introduction thereof would be error. *Christy v. Chicago, Burlington & Quincy RR*, 212 S.W.2d 476, 479."

Appellants introduced two warranty deeds. The first deed evinced title to their residential tract. The other deed granted appellants an easement for ingress/egress over a 30-foot strip running north/south from the residential tract. Route 240 cut through this 30-foot strip.

Appellants claimed an exclusive easement by deed and that the 30-foot strip provided their ingress/egress to city streets and thoroughfares. They also claim that respondent's action of severing this 30-foot strip by Route 240 produced damages special to their residential tract and entitled them to compensation for the taking. Respondents contend that since appellants' residential tract had additional ingress/egress, that appellants' claim of damages was for circuity of route.

The 30-foot strip in question can be best described as a 30-foot wide strip running north of a "T" intersection formed by English and Slater Streets in the city of Marshall, Missouri. This strip was referred to as an extension of English Street.

·Appellants' claim of exclusiveness by deed became questionable under the evidence. There was no documentary evidence that the strip was ever dedicated as a public street. Although most witnesses testified that they did not know one way or another, appellants believed that the strip has never been dedicated a public street.

The questioned area was annexed by the city of Marshall, Missouri some three years (1970) prior to the taking by respondent (1973). Appellants testified that after annexation, the area was maintained by the city, and in this regard stated: "We were taken into the city. So, after we were annexed it was the city's responsibility to take care of it. They didn't put us on a regular maintenance schedule, but occasionally they would come around if the road got pretty bad."

Following the transfer by deed, appellants' grantor continued to use the 30-foot strip to gain access to other properties adjacent to appellants' residential tract. This grantor was developing the surrounding area, and persons interested in this development traveled the 30-foot strip. There was evidence that "others used it" and when one of appellants' witnesses was asked, "It was not an exclusive easement for Brooks only, was it?" he replied, "I would say it was not." This witness was a local real estate broker called by appellants to establish appellants' damages. This witness acknowledged alternative ingress/egress to appellants' land, but added that the "cutting" of the 30-foot strip by Route 240 caused appellants to sustain damages of $7,000–$9,000 due to *change of location of access*. As will be observed, appellants' claim of an exclusive easement, whether equivocal or not, is really not dispositive of this appeal anyway.

 As to appellants' claim that the court's ruling on respondent's motion in limine prohibited appellants from introducing evidence of damages, the record reveals that neither the court's ruling on the motion nor the evidence on the record relating to damages supports appellants' contention. When presented with respondent's motion, the court ruled:

"For the record, Plaintiff's motion in limine will be sustained. The defendant *will not be permitted to talk about circuitous route as an item of defense, but will be allowed to talk about special damages.*" (emphasis added)

It can be seen from the foregoing that the ruling was limited to evidence of circuitous route of access. This was a proper ruling under our law because mere circuity of route is not a compensable item of damages. *Christy v. Chicago, B. & Q. R. Co.,*

*supra; State ex rel. Missouri Highway Comm'n v. Brockfeld*, 388 S.W.2d 862 (Mo. banc 1965), cert. denied 382 U.S. 846, 86 S.Ct. 79, 15 L.Ed.2d 16 (1965); *State ex rel. Missouri Highway Comm'n v. Meier*, 388 S.W.2d 855 (Mo.banc 1965). Recovery for damages in condemnation does not include damages and inconvenience common to the general public. *Meier, supra; Applegate v. Director General of Chicago, R.I. & P. Ry. Co.*, 205 Mo.App. 611, 226 S.W. 628, 630 (1920). Condemnees claiming damages must show their injury to be *different in kind* rather than *greater in degree* than those injuries suffered by the general public. *Christy, supra.* Property rights in streets, such as the entitlement of damages to the condemnee, are rights of access to the street or free passage from his property to the street. Such right of access has been termed an "easement of access". *Wilson v. Kansas City*, 162 S.W.2d 802, 803 (Mo.1942); *Gorman v. Chicago, B. & Q. R. Co.*, 255 Mo. 483, 164 S.W. 509, 511 (1914). Such right of access does not extend to or along the entire frontage of the property but may be "limited to a reasonable access under the existing facts and circumstances." *Meier, supra* at 859. In cases involving the vacating of streets, an injury special to a property requires the "property or some part of it . . . [to] . . . abut on the vacated portion, or else the vacation must deprive him of reasonable access to the general system of streets." *Arcadia Realty Co. v. City of St. Louis*, 326 Mo. 273, 30 S.W.2d 995, 997 (1930). See also *Crenshaw v. City of Belle*, 571 S.W.2d 234, 235 (Mo.banc 1978); *State ex rel. State Highway Comm'n v. Kemper*, 542 S.W.2d 798, 801 (Mo.App.1976) and *Christy, supra.*

■ The evidence indicates that appellants' residential tract does not abut Route 240, or that portion of the easement obstructed by Route 240. However, the right of recovery is not always limited to abutting owners. In *Rude v. City of St. Louis*, 93 Mo. 408, 6 S.W. 257, 258 (1887), our state Supreme Court held:

"Generally, where damages have been awarded to a property owner for an obstruction in the street, the obstruction has been in that part of the street upon which the property fronted; yet it cannot be said that that is always essential to a recovery. The property may not be on the street, yet communicate with it by means of a private way, in which event it would seem that an obstruction at the private way would be an infringement of a private right."

Appellants assert that the instant case falls squarely and exclusively within *Rude.* As has been discussed above, the evidence casts some doubt upon appellants' exclusive easement. In addition, although appellants claim injury different in kind than that suffered by the general public, (*deprivation of reasonable access to the general system of streets*) and although Route 240 cut the 30-foot strip, appellants did have an alternate access to their residential property. While they were not entirely satisfied with this alternate access, they utilized this alternate route (Ridge Street) for one year. This route extended north from their house to Highway 41. They also used a newly-constructed state built graveled access road, which extended from the rear of their home, west some 1,400 feet and intersected with Route 240.[3]

Appellants introduced evidence about the condition of the new access road and argue the reasonableness of their ingress/egress because of the taking. They also presented evidence that their residence was not visible from the access road, visitors had difficulty in locating their residence, the access road was poorly maintained, it was too narrow for two-way traffic and that Ridge was in the same or worse condition.

Appellants introduced further evidence of their claimed damages. They claimed that before the taking, their property was worth $40,000 and after, it was worth $20,000, due to the change of access. A real estate

---

3. Access to the street system of the city of Marshall can be had by use of Route 240 or by transversing Route 240 onto Chestnut Street which is located immediately opposite the access road.

broker, who was called as an expert witness for appellants, testified that because of the change of access, appellants' property diminished in value by between $7,000 and $9,000. Appellants also claimed damages of $1,883, which resulted from the relocation and installation of water lines to conform to city codes. Of this sum, $1,500 was paid to the city for the main water line, and the balance was for the lateral hookup to appellants' residence. No further evidence on damages was offered. On the issue of damages, respondent's expert witness testified that appellants' property had suffered no diminution in value.

While the court sustained respondent's motion in limine, this ruling in reality had no effect upon the issue of damages or the admission of evidence relative to damages. In fact, the only excluded evidence was that offered by appellants which showed that appellants now have to travel an additional 2,800 feet to reach their mailbox. The location of the mailbox, the grade, the condition of the new access road, and the amount of traffic on Route 240 (which appellants now have to cross) were all admitted into evidence. Although the direct evidence pertaining to the added distance of travel (2,800 feet) was excluded, this evidence was certainly ascertainable by the jury after they were told the location of the mailbox and the routes accessible thereto.

While appellants' attack is directed to the court's sustaining respondent's motion in limine, the evidence upon this record clearly reveals that appellants submitted, and it must be inferred that the jury considered, their (appellants') claim for damages. The court did not, by its ruling, prohibit appellants from introducing evidence on their damages which included damages to their claimed easement. This fact was conceded by appellants in argument before this court, and that concession is supported by the evidence upon the record. The net effect of the court's ruling which appellants now attack was the prevention of direct testimony concerning the distance (2,800 feet) to be traveled by appellants to and from their mailbox. All other facts bearing on damages were presented to the jury. Evidence

concerning the distance (2,800 feet) to and from the mailbox was indirectly before the jury once the location of the mailbox and the lay of the land were in evidence. The bottom line is that in spite of the court's ruling on the motion in limine, appellants were permitted to submit all factors relative to their claim for damages.

There has been some contention that the court's ruling on the motion in limine effectively prevented the expert witness from attributing loss of value to circuity of route. This contention is dispelled by the record which reveals that this expert was asked on redirect examination and responded in the following manner on that very issue:

"Q. David, did I hear you testify earlier that your valuation, your estimate of damages was in no way based on the circuity of travel, the extra distance, is that correct?

A. That's correct."

The foregoing establishes two things. First, it dispels the contention that this expert was prevented from attributing loss of value to circuity, for upon both cross-examination and redirect examination, he was free to testify on the issue of circuity. Secondly, and just as important, it is an evidentiary reference that in spite of the court's ruling on the motion in limine, circuity was in evidence and presented before the jury for its consideration.

The jury was at liberty to disbelieve appellants' testimony that their property had been diminished by $20,000 by the change in access. In addition, appellants' expert witness placed appellants' damages at between $7,000 and $9,000. The opinion of a qualified witness concerning the extent of damages constitutes substantial evidence. *City of Lee's Summit v. Hinck*, 618 S.W.2d 719 (Mo.App.1981) and *St. Louis-San Francisco Railway Co. v. Morrison*, 439 S.W.2d 27 (Mo.App.1969). This court does not weigh the evidence and if an award is within the range of competent evidence, it is supported by substantial evidence and will not be disturbed. *Hinck, supra* and *M & A Electric Power Co-Op v. Tomlinson*, 608 S.W.2d 571 (Mo.App.1980).

Appellants failed to convince the jury that they (appellants) were denied reasonable access as a result of the taking. Their complaint that a required greater distance of travel was a material item of damage is not supported by authority. The court's sustaining of respondent's motion in limine was limited to such evidence, and the trial ruling excluding such evidence did not relate to the matter of damages. Rather, it was limited to the evidence of circuity of route.[4] The result of the evidence admitted placed evidence of circuity before the jury, and the court's ruling upon neither respondent's motion in limine nor the evidence offered prevented other evidence relative to the reasonableness of access.

Appellants introduced evidence of damages which consisted of their testimony of a claimed loss of $20,000. The expert witness alluded to damages of $7,000 to $9,000. Both claims of damages included the taking of the easement. The only other item of damages totalled $1,853 and was for the relocation and replacement of main and lateral water lines. As appellants have stated, the issue is whether they were denied reasonable access by the taking. This was a question of fact left to the determination of the jury. The court's ruling sustaining respondent's motion did not prohibit appellants' introduction of evidence on the issue of damages, but as discussed above, the motion and a subsequent trial ruling excluded only evidence which showed that appellants would be caused to travel 2,800 feet farther (1,400 feet each way) to and from their mailbox. The ruling excluding such evidence was proper. A reading of the entire record indicates this ruling was of little import anyway, since the jury could deduce the distance under properly admitted evidence, based on the location and route to and from appellants' mailbox.

 This court cannot conclude, based upon the facts and circumstances of the instant proceedings, that the jury award

was improper. The jury award is not subject to the attack that the court's granting of respondent's motion in limine excluded material evidence on the issue of damages. Appellants were vested by deed with a proprietary interest in the easement, although the evidence demonstrates that their use thereof was less than exclusive. It cannot be said that the jury award of $5,000 failed to account for this proprietary interest, as the only other evidence of itemized damages was $1,853, representing the relocation and replacement of the main and lateral water lines.

Appellants' point three (3), for the reasons set forth herein, is found to be without merit and is ruled against them.

The judgment is in all respects affirmed.

SOMERVILLE, C. J., and SHANGLER, TURNAGE and NUGENT, JJ., concur.

DIXON, J., dissents in separate dissenting opinion.

KENNEDY, J., concurs in separate dissenting opinion of DIXON, J.

DIXON, Judge, dissenting.

I dissent from the principal opinion in finding no error in the sustaining of the motion in limine of the Commission excluding evidence of circuity of route.

I agree and concur in the majority opinion's treatment of the points raised concerning the timing of the motion and the issue raised as to error in reading the instructions after argument had commenced. However, in my view, the case should be reversed and remanded, and these issues do not require decision since they are unlikely to recur.

Fundamental to the issue posed in this case is an understanding of the physical situation. The landowners purchased a tract of land and house. The tract is approximately 150 feet wide on the north and south sides, 200 feet wide on the east side, and 250 feet wide on the west. The grantor

---

4. The excluded evidence was the distance now required to appellants' mailbox. (1,400 feet one direction—appellants attempted to prove an overall travel distance of 2,800 feet.) All other evidence relating to access was, in fact, before the jury in spite of this court's ruling on the motion in limine.

of the tract also conveyed a 30-foot strip of land for an easement running north approximately 1,000 feet to connect the tract of land to English Street in Marshall, Missouri. At the point where the 30-foot easement abuts English Street, an east-west street, Slater, joins English. The easement conveyed was the existing driveway from the house to English Street. After the landowners bought the property, others abutting the easement and, necessarily, anyone coming to the defendant's residence, utilized the roadway. The City of Marshall annexed the land, including the land over which the easement runs, but the easement has never been dedicated as a public street. The deeds are dated April 1, 1967, and the date of the taking in condemnation was January 5, 1973, so no adverse use by anyone could have ripened into a prescriptive easement. *M. H. Siegfried Real Estate, Inc. v. Renfrow*, 592 S.W.2d 488 (Mo.App. 1979). At the time of taking, the landowners had a right to enforce use by them of the easement. Such an easement is property. *Link v. St. Louis-S. F. Ry. Co.*, 556 S.W.2d 714 (Mo.App.1977).

The improvement constructed by the Commission was a limited access roadway running generally northeast to southwest and cutting the 30-foot easement about 400 feet south of the defendant's house.[1] An access roadway terminates at the south end of the easement remaining to the north of the new highway. The landowner continues to utilize about 300 feet of the easement to reach the access road and then some 800 feet of access road continues parallel to the new limited access road to a point of access. The landowner's property to which the easement is appurtenant abuts no part of the improvement. At the point where the easement was broken by the limited access highway, a cut was necessary and the access road apparently slopes to the east from the point where it reaches the easement of the landowners. During construction and apparently to the present, the landowners can reach Highway 41 by proceeding north to Ridge Street which was unimproved at the time of the taking. There is nothing to indicate Ridge Street abuts the landowner's property in the evidence in this record. There is an inference that the easement was extended to the north by use to connect with Ridge Street.

The trial court, by sustaining the motion of the Commission, eliminated any evidence of circuity. The majority opinion asserts this is a proper ruling based on *Christy v. Chicago, B. & Q. R. R.*, 240 Mo.App. 643, 212 S.W.2d 476 (1948); *State ex rel. State Highway Commission v. Brockfeld*, 388 S.W.2d 862 (Mo.banc 1965); and *State ex rel. State Highway Commission v. Meier*, 388 S.W.2d 855 (Mo.banc 1965), and the "common injury rule" set forth in *Christy*.

These cases are inappropriate in fact and in law. *Christy* was a case where the railroad removed a bridge over the railroad right of way cutting the street which had traversed the bridge. It was thus, as the court points out, an obstruction in a *public way* and in a part of the public way *not* abutting the plaintiff's land. As such, it damaged everyone who utilized the street and not the plaintiff alone. The *Christy* court specifically excepted the fact situation here presented:

> It could not be said that a property owner would have reasonable access to his property, . . ., if the property is connected with the obstructed street by a private way and the obstruction rendered the private way of no use. (See *Rude v. City of St. Louis*, supra, 93 Mo. 408, loc. cit. 415, 6 S.W. 257.)
>
> There may be other instances where property does not abut upon the obstructed part of the street, yet, the obstruction might deprive the property owner of reasonable access to it. But such are not the facts in the case at bar.

212 S.W.2d at 479–80. The instant case is not the vacation nor closing of a public way or street or highway upon which the land abuts, but the obstruction of a private way.

---

1. It is doubtful that the petition describes the easement. The original judgment in condemnation is not in the file, but the judgment on the jury award fails to describe the easement. The case was tried on the theory the easement was taken.

The limited access highway cases, *Brock-feld, supra,* and *Meier, supra,* are equally not in point. Both of those cases hold that when the state, through the police power, denies access to the throughway and substitutes access to an outer roadway for all abutting owners, no damage accrues. The court in both cases relied heavily on the common injury doctrine as set forth in *Christy.* There was no difference in kind of damages, only the degree of damages by the various landowners whose right of access was limited.

Here, the landowner has lost something which no one else possessed. He had, prior to the taking, an undeniable claim of right to travel from his property to the intersection of Slater and English Streets, which are not involved in the improvement made by the Commission. It was an important and valuable right as evidenced by the fact that the deeds for the house and lot were simultaneously executed and recorded, and the landowner said it was a condition of the sale that the easement be given at the same time. The creation of the highway improvement has physically interrupted and rendered useless the private way he bargained for and to which he received a deed. Any such interference with the landowner's easement by a private party would have entitled the landowner to injunctive relief and damages either temporary or as in the instant case loss of value to the dominant tract. *M. H. Siegfried Real Estate, Inc., supra,* at 494; *De Salme v. Union Electric Light and Power Co.,* 232 Mo.App. 245, 102 S.W.2d 779, 782 (1937); *Stilwell v. St. Louis and H. Ry.,* 39 Mo.App. 221 (1890).

The landowner was entitled to recover for the difference in market value of the dominant tract with the easement before the taking and without the easement after the taking. This question of value before and after necessarily involves the benefit accruing to the landowner from his right in the easement. That benefit included the right of direct access to the city streets and after the taking his indirect access is the measure of his inconvenience. Thus, the circuity of route is a factor affecting the market value of the property after the permanent interruption of the easement.

The majority opinion seems to tender as an alternative ground for affirmance the assertion that the evidence of circuitous route was before the jury.

The facts which demonstrated the circuity were before the jury, but the cross-examination by the Commission of the landowner's expert effectively negated any inference that the jury could consider such facts. The court likewise instructed the jury that certain exhibits showing the access to the street system of Marshall before the taking were not to be considered to show such routes.

The landowners' expert had given a figure of $7,000 to $9,000 for damages for "change in access" or "different approach." Counsel for the Highway Department first established on cross-examination that the witness considered the grade of the access after condemnation and on motion the court struck the witness's testimony as "being based on construction features." Despite vigorous cross-examination on the issue, the expert stubbornly clung to his assertion of damage. ` The cross-examination asserted by questions that the easement had been established as a "street" or a "non exclusive easement." The witness was then asked if his opinion would be different if the present access were streets, and his response was:

> I still feel that the change in the street, whatever you want to call this, damaged the value of the property.

The Highway Department then moved for and received an order striking his testimony which was sustained. The effect of this order was to remove from the jury's consideration the only basis for the expert's opinion as to damage.

The court's ruling on the motion in limine and the subsequent rulings striking the testimony of the expert witness effectively excluded from the jury's consideration any testimony concerning the real basis for the claimed damage of the landowner: the value of the right of access and the detriment of circuity of route. The rulings of the trial court had the same effect as an instruction

withdrawing the issue and evidence upon the issue from the jury. Evidence proper for consideration by the jury of an injury to the particular land which is not common to others affected by the improvement is properly considered on the issue of valuation and evidence as to the issue may not be withdrawn from the jury. *St. Joseph Light and Power Company v. Ohlhausen*, 621 S.W.2d 301 (Mo.App.1981).

I would reverse and remand for a new trial.